*In re* DANIELLE BROWN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* JOHN BROWN, Respondent-Appellant.)— *In re* DANIELLE BROWN, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* MELANIE GLIDEWELL, Respondent-Appellant.)

Fourth District   Nos. 16013, 16024 cons.

Opinion filed September 17, 1980.—Rehearing denied September 30, 1980.

Michael J. O'Brien, and Steven M. Helm, of Dukes, O'Rourke, Stewart & Martin, both of Danville, for appellants.

Thomas J. Fahey, State's Attorney, of Danville (Gary J. Anderson, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Joseph Skowronski, of Snyder & Skowronski, of Danville, guardian ad litem.

Mr. JUSTICE WEBBER delivered the opinion of the court:

These consolidated appeals lie from an order of the circuit court of Vermilion County in which the court found the minor to be neglected, found both natural parents unfit, declared the minor a ward of the court and placed her in the guardianship of the Department of Children and Family Services with power to consent to adoption.

Both parents have appealed. Each raises as an issue (1) that the trial court's finding of unfitness as to himself is against the manifest weight of the evidence, and (2) that the trial court erred in failing to make an explicit finding in the order that the appointment of a guardian with power to consent to adoption was in the best interest of the child. Additionally, the mother raises two more issues: (1) that the finding of neglect was against the manifest weight of the evidence, and (2) that the trial court erred in admitting certain medical evidence. We are of the opinion that the finding of unfitness as to the father was against the manifest weight of the evidence and that the order was defective. Hence, we reverse in part and affirm in part.

The record is lengthy and will not be recited here in detail except insofar as it affects the various issues to be discussed. We have examined it in detail and find that by its manifest weight it supports the finding of neglect of the minor, and the unfitness of the mother. It does not support by the same standard the unfitness of the father.

The minor (Danielle) is one of two natural children of the respondents. The respondent mother (Melanie) at a time not material to these appeals divorced the respondent father (John). She was granted custody of Danielle, and John was given visitation privileges and ordered to pay child support. Later, Melanie married one Glidewell, who was convicted and sentenced for the homicide of Danielle's sister, Cassandra. (*People v. Glidewell* (1979), 78 Ill. App. 3d 734, 397 N.E.2d 544.) This homicide occurred on March 29, 1978, and on March 30, 1978, a juvenile petition was filed alleging that Danielle was neglected in that her environment was injurious to her welfare. (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(b).) At that time the court entered an order for temporary shelter care, placing Danielle in the temporary guardianship and custody of the Department of Children and Family Services.

On January 5, 1979, an amended petition was filed which set up in detail the factual allegations concerning Danielle, her natural parents, Melanie and John, and her stepfather, Glidewell. The petitioner's prayer asked: (1) that Melanie and John be found unfit, (2) that the court make a finding that it was in the best interests of Danielle to terminate all parental rights of Melanie and John, (3) that the court place Danielle in the custody and guardianship of the guardianship administrator of the Department of Children and Family Services with authority to consent to adoption, (4) that Danielle be declared neglected as defined in section 2—4(1)(b) of the Juvenile Court Act, (5) that the court make a finding that such neglect was the result of physical abuse, and (6) that the court make a finding that it was in the best interests of Danielle that she be made a ward of the court.

A consolidated adjudicatory and dispositional hearing was held extending over four days, November 28, 29, 30, and December 5, 1979. At the conclusion of the hearing the trial court announced his decision and a written order was filed January 8, 1980. That order, after finding that Danielle was neglected, that she should be made a ward of the court and that Melanie and John were unfit within meaning of "Chapter 40, Section 1501(d), *Illinois Revised Statutes*," adjudicated as follows:

"A. That said minor is neglected as specifically defined in Chapter 37, Section 702—4, *Illinois Revised Statutes*, in that her environment is injurious to her welfare.

B. That the minor shall be and is hereby made a ward of the court.

C. That all parental rights of respondents, Melanie Glidewell and John Brown shall be and are hereby terminated.

D. That the minor shall be and is hereby placed in the Custody and Guardianship of Anthony J. Veronico, Guardianship Administrator, Department of Children and Family Services, his successor or successors in office, with authority to consent to adoption and all medical and dental care."

Turning first to the question of the validity of the order, we find it deficient in two respects: (1) the conferral of authority to adopt without a finding that such authority is in the best interests of the minor, and (2) the failure to find whether the neglect is the result of physical abuse inflicted by the parent as is required by section 4—8(2) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 704—8(2)).

Section 5—9(2) of the Juvenile Court Act provides in part that "[i]f the petition prays and the court finds that it is in the best interests of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court * * * after finding a non-consenting parent to be unfit * * * may empower the guardian * * * in the order appointing him as such guardian, * * * to consent to * * * adoption." Ill. Rev. Stat. 1977, ch. 37, par. 705—9(2).

From an examination of the order as set forth above, it can readily be seen that there was no finding that placement with authority to consent to adoption was in the best interests of the minor. There is some brief language in the court's remarks in the record concerning adoption but it falls far short of becoming a finding which might be supplied from a presumption of regularity in the record.

In *Zook v. Spannaus* (1966), 34 Ill. 2d 612, 217 N.E.2d 789, the supreme court was dealing with a situation under section 15 of the Family Court Act (Ill. Rev. Stat. 1963, ch. 23, par. 2026), which was the predecessor of section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—7). In *Zook*, a neglect and dependency petition was filed and an unduly accelerated hearing was held without issuance nor service of summons. The final order of the court found the minors to be dependent and neglected and placed them with a church-related welfare organization with authority to consent to adoption. On contest of the order by one of the children's grandmothers, the supreme court held that the trial court was without jurisdiction to enter such an order, saying:

"Nor did the order of the trial court in the dependency proceedings make findings that it was to the best interests of the minors that the guardian be given authority to consent to their adoption." 34 Ill. 2d 612, 615, 217 N.E.2d 789, 790-91.

Admittedly, there were many more shortcomings in *Zook* than in the

instant case, but the principle remains the same: "In this type of special statutory proceeding the guardian cannot benefit from the usual presumption of regularity but must support the order by the record." 34 Ill. 2d 612, 615-16, 217 N.E.2d 789, 791.

The People cite a variety of cases wherein the failure to make an explicit adjudication of wardship was not held to be jurisdictional, and hence not fatal to the order, since it could be inferred from, and supported by, the record. These are of no help in the instant case since there was an explicit adjudication of wardship and following such adjudication the trial court has many options open to it short of authorizing adoption under section 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—7).

In *In re Jennings* (1977), 68 Ill. 2d 125, 368 N.E.2d 864, a neglect petition had been filed and the natural mother signed a consent to adoption. The court failed to make an explicit adjudication of wardship, but the supreme court held that the practical effect was to give the children ward status. However, with respect to the adoption aspect, the court said, citing *Zook*: "We do not quarrel with the proposition that in a special statutory proceeding an order must contain the jurisdictional findings prescribed by statute." 68 Ill. 2d 125, 132, 368 N.E.2d 864, 868. ■■ In the instant case there was no finding in the order that placement with authority to consent to adoption was in the best interests of Danielle; there is insufficient evidence in the record to supply such a finding in so serious a matter; therefore, the trial court was without jurisdiction to enter this portion of the order.

Closely allied with the foregoing deficiency is the failure of the trial court to make a finding concerning physical abuse as required by section 4—8(2) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 704—8(2)), and as prayed in the petition. This is necessary in view of the dispositional provisions found in section 5—2(1)(c) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 705—2(1)(c)):

> "However, in any case in which a minor is found by the court to be neglected under Section 2—4 of this Act and the court has made a further finding under paragraph (2) of Section 4—8 that such neglect is the result of physical abuse, custody of the minor shall not be restored to any parent, guardian or legal custodian found by the court to have inflicted physical abuse on the minor until such time as a hearing is held on the issue of the fitness of such parent, guardian or legal custodian to care for the minor and the court enters an order that such parent, guardian or legal custodian is fit to care for the minor."

■■ While we do not regard this provision as jurisdictional in the same sense as the foregoing with reference to the authority to consent to

adoption, under the facts of the instant case findings were necessary for a proper disposition. The record reveals that Melanie had inflicted physical abuse on Danielle while John had not. The current state of the record places them on an equal footing. This effectively eliminates the protection to Danielle of the rehabilitative hearing provided in section 5—2(1)(c).

■■ The next issue concerns Melanie's contention that the neglect of Danielle was not established by a preponderance of the evidence. We disagree. There was ample evidence that Glidewell abused Danielle on an almost continuous basis and that Melanie did nothing to prevent it and, in fact, attempted to secrete it. The petition was based on section 2—4(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—4(1)(b)) alleging that the minor's environment was injurious to her welfare. While Melanie denied that she personally abused Danielle, the trial court found this unconvincing, and even if true, would not forfend the finding of neglect based on her failure to protect Danielle from Glidewell. In *In re Butt* (1979), 76 Ill. App. 3d 587, 395 N.E.2d 1, the court held that the family must be regarded as a unit, and in *In re Holmes* (1975), 28 Ill. App. 3d 104, 328 N.E.2d 35, the court held that a contention that one personally committed no violence was "totally beside the point." (28 Ill. App. 3d 104, 106, 28 N.E.2d 35.) We reiterate that any parent has the obligation to protect a child from harm.

Nor are we persuaded by Melanie's argument that abuse will not occur in the future since she has begun divorce proceedings against Glidewell. There is ample evidence of Melanie's dislike, almost psychotic in fury, of Danielle. Many times she expressed hatred for the child, calling her a "f____n retarded brat," a "fat, ugly, f____g retarded brat," stating on one occasion to her cousin that she "could have her." On another occasion when Melanie was to pick up both children from her stepmother-in-law, she told her that she would take Cassandra but would not take Danielle home, and if the stepmother-in-law did not want her, she should give Danielle to her father. The State more than sustained its burden of proof on this issue.

Melanie's next issue follows closely on the neglect matter just discussed. She claims that the court's finding of her unfitness is against the manifest weight of the evidence. Again we disagree. The allegations were made under section 1, subparagraphs D(b), D(d) and D(g) of "An Act in relation to the adoption of persons," approved July 17, 1959, effective January 1, 1960 (Adoption Act herein) (Ill. Rev. Stat. 1977, ch. 40, par. 1501 D(b), D(d) and D(g)). These subparagraphs define an unfit person as one who fails to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare, or who substantially neglects the child on a continuous or repeated basis, or who fails to protect the child from conditions within his environment injurious to the

child's welfare. Any one, or all, of these are amply demonstrated in the record as to Melanie.

Without detailing this voluminous record, we observe that Melanie left Danielle with her stepmother-in-law for months at a time without visiting or inquiring about her welfare. She showed no concern when informed of Danielle's nightmares, stating only that Danielle was retarded anyway. When the stepmother-in-law requested food and warmer clothing for Danielle, Melanie refused to bring food for "that fat little pig" and never brought over any of her clothing.

There was extensive evidence of physical abuse of Danielle by Glidewell, and Melanie did nothing to protect her. On at least one occasion Melanie herself was seen dropping Danielle to the floor and kicking her.

The State adequately sustained its burden of proof on this issue as to Melanie. However, we cannot say the same as to John, the natural father. As to him, the petition also alleged that he failed to maintain a reasonable degree of interest, concern or responsibility as to Danielle's welfare and failed to protect her from conditions within her environment which were injurious to her welfare. While we believe that his attitude was passive and that a more forceful personality would have been able to take better charge of the situation, we do not believe that the evidence sustains a finding of unfitness as to him. The record shows that he lived with his stepmother off and on during the times, that Danielle was also there and that he played with her, held her, showed affection for her, bought toys, and on at least one occasion gave his stepmother money for the children. At one time he saw burns on Danielle which were apparently made by a heated fork (other evidence indicated that these had been made by Glidewell). He reported these to the Department of Children and Family Services, and called later to inquire if investigation had revealed anything. In the trial proceedings, the trial court struck for lack of evidence an allegation that John had had no contact with Danielle from August 1977 to March 1978.

As to the situation with Glidewell, hindsight doubtless indicates that John might have been able to do more than he did. However, the facts facing him were that he was far in arrears in his child support and had no regular job or place of residence. The possibility of obtaining a change of custody would have been remote. Furthermore, Glidewell appears to have been a violent man and any approach by John by way of self-help would have led to reprisals of a demoniac variety.

We find John's posture much like that shown in *In re Hurley* (1976), 44 Ill. App. 3d 260, 357 N.E.2d 815. In that case the court reversed a termination of parental rights, saying: "Though the record is replete with evidence of respondent's shortcomings and failures, it is her efforts to

carry out her parental responsibilities and not her success, by which fitness is to be determined pursuant to section D(b) of the Adoption Act." 44 Ill. App. 3d 260, 267, 357 N.E.2d 815, 820.

Despite what we have said concerning John's efforts we do not wish to be understood as saying that these are yet sufficient to award custody of Danielle to him. As indicated above, under section 5—7 of the Juvenile Court Act the trial court has a variety of options open to it. The reversal of the finding of John's unfitness is applicable only under section 1D of the Adoption Act.

Melanie's final contention is that the trial court committed error in permitting two physicians to offer their opinions that the bruises and trauma observed on Danielle were intentionally inflicted and were not accidental. Upon being taken into custody by police officers on March 29, 1978, Danielle was taken to Lakeview Medical Center where she was examined by the doctors. Both doctors were experienced in child abuse and in pediatrics; each expressed opinions that the injuries could have been accidental, but taking into consideration all factors, they determined that they were inflicted. Melanie claims that this was only guesswork on their part. We disagree. Both doctors were found qualified by the trial court, neither expressed doubt as to his diagnosis, and the factors upon which their conclusions were based were supported by other evidence.

For all of the foregoing reasons, the adjudication of neglect is affirmed, the declaration of wardship is affirmed, the finding of unfitness of Melanie Glidewell is affirmed; the finding of unfitness of John Brown is reversed; the guardianship of the Guardianship Administrator of the Department of Children and Family Services is affirmed, but the authority to consent to adoption is vacated; and the cause is remanded to the circuit court of Vermilion County for further proceedings in accordance with the views herein expressed.

Affirmed in part, reversed and vacated in part, and remanded with directions.

TRAPP and GREEN, JJ., concur.