*In re* CARL SIMMONS, a Minor (The People of the State of Illinois, Petitioner-Appellant, v. Monica Simmons *et al.*, Respondents-Appellees).

Fifth District   No. 83—217

Opinion filed July 19, 1984.

Kathleen M. Alling, State's Attorney, of Mt. Vernon (Stephen E. Norris and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

John R. Cesario and Charles K. Stowe, Special Public Defenders, of Mt. Vernon, for appellees.

JUSTICE KASSERMAN delivered the opinion of the court:

The State of Illinois Department of Children and Family Services (Department) initiated this action on December 20, 1982, by filing a petition praying that Carl Simmons be declared to be an abused child and that he be adjudged a ward of the court and the Department be appointed as his guardian. This petition was later amended. After a hearing before the circuit court of Jefferson County, the court dismissed the amended petition, finding that the evidence was not sufficient to justify finding neglect or abuse of the minor. The State appeals. The natural parents are the appellees.

The record indicates that the minor suffered a "spiral" fracture of his left leg on December 16, 1982. The child, who was not quite three years old at that time, lived in a mobile home with his natural mother, Monica Simmons (Simmons), with Eddie Shaffer (Shaffer), described in the petitions as the mother's paramour, and with his sister, Tanya, not quite five years old, and an infant born approximately December 1, 1982; Simmons and Shaffer were the natural parents of the latter child. According to the December 20, 1982, petition, Carl stated that he received the injury when he was hit by Shaffer. The petition further alleged that on September 9, 1982, Shaffer struck Carl in the face, bruising Carl's left cheek. While the case was pending in the circuit court, the Department filed an amended petition, adding a prayer that Carl's environment be found to be injurious to his welfare. The amended petition set forth the additional allegations that, according to Simmons, Shaffer reacted in a violent manner when under the influence of alcohol and that the Jefferson County sheriff's department had been called to the Shaffer-Simmons residence several times regarding domestic disputes.

At a "shelter care hearing" held December 20, 1982, Judge Krause appointed a guardian *ad litem* for Carl. The sole witness to testify was Suzanne Graham, a social worker employed by the Department. According to Graham, the September 1982 incident had resulted in a report of suspected child abuse, and the family had agreed to have the Department provide day-care services. According to Graham, Carl's mother had told her that Shaffer had slapped Carl's face, that Shaffer was having a drinking problem at the time, that she had moved in with her brother, and that she had moved back to Shaffer's residence because she had to leave her brother's apartment and had nowhere else to go. According to Graham, Shaffer admitted slapping the child, stated it was "possible" he had a drinking problem, and admitted that he had been convicted of driving under the influence of alcohol. According to Graham, Shaffer's sister, Vicki Porter, had told

her that her brother needed counseling regarding his drinking problem and that her concern was for Simmons and the children. Regarding the December 1982 incident, Graham testified that Carl told her Shaffer had hit him, and that Tanya, when asked on December 17, 1982, why Carl was in the hospital, echoed Carl's statement.

At the conclusion of the hearing on December 20, 1982, the court appointed the Department temporary guardian for Carl. Those represented at the February 20 and 24 hearings on the merits before Judge Keenan included Simmons, the State, Carl's natural father, and Carl. Shaffer appeared *pro se*. The evidence adduced on February 20 and 24 was as follows:

Patricia Dreas, who was nursing supervisor at Mt. Vernon Hospital when Carl was brought to the emergency room by Shaffer on December 16, 1982, testified that Shaffer stated that Carl was accident-prone, that he was injured at a day-care center or on the way home, that Carl was limping slightly when he got home, and that later Carl could not walk. According to Dreas, when Carl was taken out of Shaffer's presence and asked what had happened to him, Carl responded that daddy did it. Asked who "daddy" was, Carl replied that Eddie did it, and pointed to the man who brought him in. Carl did not attempt to explain the manner in which he was injured. Dreas recalled no "other" marks being found on Carl at the time.

Dr. Kenneth Peart, a staff physician at the hospital, testified that since beginning his medical practice in 1958, he had dealt with a "fair number" of spiral fractures. According to Dr. Peart, a spiral fracture usually involved a twisting motion, as where a runner caught his foot or where someone grabbed a child's foot and yanked or twisted. Dr. Peart stated that skiing was a common source of such injuries; however, children Carl's age did not ski and did not have enough body mass to put sufficient force on a caught foot to produce a spiral fracture. Dr. Peart testified that he did not recall any child of three years of age incurring a spiral fracture as the result of a natural accident. Asked whether anything about the injury itself would indicate abuse, Dr. Peart replied that in a child of Carl's age it was considered suspicious, and that it was Carl's statement that Shaffer had done it which, together with the nature of the injury, had prompted the report of suspected abuse.

Suzanne Graham testified that Carl's exact words on being interviewed the day after admission to the hospital were that Shaffer "hit me." Graham stated that she always worked with abused and neglected children and was in the practice of being careful not to suggest an answer to such a child while attempting to elicit information.

Graham also stated that when she interviewed Carl's mother on September 13, 1982, as to how Carl's face became bruised, Simmons replied that Shaffer had slapped him.

Jefferson County sheriff's deputy Roy Bradford testified that he was called to the Shaffer-Simmons residence by the Department, which reported that Shaffer was "beating up on" Simmons. According to Bradford, Simmons wanted to leave with her baby but Shaffer did not want her to take the baby. Bradford related that Simmons said that she did not want to leave the baby because of what had happened to the boy, and that Shaffer replied that if she remembered right, she was the one who broke his leg. Bradford recalled no answer being made to that statement.

Monica Simmons testified that she did not know how Carl's leg was broken but that she had told Graham that Carl could have fallen but that she had not seen him fall. According to Simmons, Shaffer came in the house first, then Carl, then Tanya, and she then heard a noise in the utility room which separated the home's entrance from the kitchen. There was a hole for a dryer vent in the floor of the utility room but the home had no dryer. After the noise in the utility room, Carl walked to the bedroom and he was not limping. Shaffer was in the kitchen and Simmons was in the living room and Carl walked out of the bedroom limping. He cried and said he had fallen. On cross-examination, Simmons stated that when Carl fell, he started crying and Shaffer picked him up, and when Shaffer set him down, Carl walked to his room.

Simmons testified further: Her separation from Shaffer for three days in September 1982 had nothing to do with Shaffer's treatment of herself or Carl. She had been told by Shaffer that it was he who bruised Carl's face when he "smacked" Carl for urinating on him. Carl was not then toilet trained. She had not known Shaffer to strike Carl on any other occasion. Simmons did not believe Shaffer was intoxicated when he hit Carl, but Simmons had told Graham that Shaffer's drinking problem might have had something to do with it, since his drinking problem had much to do with what Shaffer did at home and was the cause of many of their fights. Asked how Shaffer behaved when intoxicated at home, Simmons replied that he was "just a madman" and had struck her but not the children in that condition.

Shaffer testified as follows: He was not told that Carl was injured when he picked him up at the day-care center, and he did not notice whether Carl was limping. Carl had followed him into the mobile home. Although he did not see Carl fall, he heard what could have been a fall and was told by Carl that he had fallen. Carl had then

walked through the living room, "[n]ot really" limping. When Carl came out of the bedroom crying, he was limping and his leg was swollen. Shaffer denied drinking before picking up the children at the day-care center. He also denied pushing or striking Carl. Asked whether he had ever spanked Carl, Shaffer at first refused to answer on the ground that his answer might incriminate him, then admitted smacking Carl on the face in September 1982 for urinating upon him.

Shaffer also testified that he drank alcoholic beverages about once a week but that he did not get drunk, violent, or out of control. Shaffer related at least three incidents in which someone from the sheriff's department had come to his home regarding a disturbance; one such incident was in January 1983 and another was prior to September 1982.

Vicki Porter, Shaffer's sister, testified that Shaffer had had a drinking problem. She testified that she called Graham out of concern for the family and that Shaffer's drinking problem was part of the reason for her concern. She stated that she had not seen Shaffer strike anyone. She related, however, that on one occasion the previous summer, she found the residence "torn up," that items had been thrown about with some breakage. Porter stated that she had been disturbed at the display of violence. According to Porter, she called Graham after noticing bruises on Carl, one on his back and another on his face. Asked what caused her to think that the bruises were not the result of an ordinary accident, Porter replied that Simmons told her that Shaffer had hit Carl. Upon objection, the court advised the parties that it would disregard Porter's testimony regarding her conversation with Simmons.

Sandy Wilson, Carl's day-care teacher, testified that when Shaffer picked up Carl on December 16, 1982, Carl was able to walk when he left. Peggy Hall, a homemaker for the Department, testified that she had viewed the utility room in the Shaffer-Simmons residence and that she found no open holes. Hall related that there was a dryer vent hole approximately three to four inches from a wall. She stated that the hole was not in the path of entry from the outside door and it was filled by a dryer hose.

Graham testified that when she interviewed Shaffer and Simmons on December 17, 1982, Shaffer told her that Carl had walked into the mobile home in front of him and that he saw Carl fall in the utility room. Graham stated that she then told Shaffer that the nature of the leg injury was not consistent with his account.

Among the hospital records in evidence was a December 16, 1982, hospital entry which stated, *inter alia*, that discoloration was found

under one of Carl's eyes and on both sides of his neck.

In the order dismissing the amended petition, the trial court stated that all of the witnesses had appeared to be credible; that neither Shaffer nor Simmons had been impeached; that Dr. Peart had stopped short of stating that Carl's injury would not have occurred except for acts or omissions by Simmons or Shaffer; and that the statement by the child explaining his injury was equivocal, ambiguous, and insufficiently corroborated to be given substantial weight.

The State argues on appeal that the trial court's conclusion that Carl was not proved to be an abused child was error where the State presented a *prima facie* case of abuse which was unrebutted.

Section 4—6(2)(e) of the Juvenile Court Act states that proof of injuries sustained by a minor or proof of the condition of a minor of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent, guardian, or custodian of such minor shall be *prima facie* evidence of abuse or neglect, as the case may be. (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(2)(e).) An abused minor is defined, *inter alia*, as one whose parent, or a paramour thereof, inflicts, causes to be inflicted or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes impairment of physical health or impairment of any bodily function (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(2)(a)(i)), or whose "environment is injurious" to his welfare (Ill. Rev. Stat. 1983, ch. 37, par. 702—4(2)(b)).

■■ ■ The standard of proof of abuse is that applicable to civil proceedings, *i.e.*, a preponderance of the evidence (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(1); *In re Brooks* (1978), 63 Ill. App. 3d 328, 337, 379 N.E.2d 872, 879); and the primary consideration in such cases is the best interests and welfare of the child. (See *In re Brooks* (1978), 63 Ill. App. 3d 328, 379 N.E.2d 872.) The finding of the trial court upon the issue of abuse must be given respectful weight and should not be disturbed unless contrary to the manifest weight of the evidence. See *In re Brooks* (1978), 63 Ill. App. 3d 328, 337, 379 N.E.2d 872.

■■ We find the conclusion of the trial court that Carl was not proved to be an abused minor to be contrary to the manifest weight of the evidence under either one or both of the definitions of abuse above stated. The most significant evidence adduced is that showing Carl's statement blaming Shaffer for the injury and Dr. Peart's testimony showing that the injury was of such a nature as would not ordinarily be sustained except by reason of the acts or omissions of Shaffer or Simmons. Dr. Peart's testimony established that Carl suffered

a twisting injury to the leg, such as would occur only if one end of the limb were held in relatively fixed position while the other end was twisted. According to Dr. Peart, such an injury in a child Carl's age was suspicious and unusual and in his memory of many years' practice had not occurred as the result of a natural accident. This evidence alone was sufficient to establish a rebuttable presumption that Carl was abused.

We find no significant rebuttal of said presumption in the evidence. Carl's parents argue, and the trial court found, that explanations for Carl's injury other than abuse were suggested by the evidence. We find nothing in the evidence regarding a possible fall by Carl in the mobile home's utility room or bedroom sufficient to rise to the level of an "explanation" or sufficient to rebut the State's *prima facie* case of abuse. The sole direct testimony in that regard is Shaffer's and Simmons' testimony that they heard a noise in the utility room. Neither claimed to see a fall. Moreover, neither testified that Carl was limping when he came out of the utility room. In view of the nature and extent of the injury suffered, such speculation cannot be said to constitute "explanation" for such an injury, unless we are prepared, and we are not, to conclude that Simmons' and Shaffer's disavowal of all knowledge is sufficient to overcome the presumption of abuse mandated by the legislature.

Nor is the medical evidence of abuse in this case uncorroborated. First and foremost is the testimony of Carl's statements inculpating Shaffer. This was direct evidence of abuse as the cause of Carl's injury. Since this evidence, like the medical evidence, tended to show abuse, the evidence as to Carl's statements tended to corroborate the medical testimony and *vice versa*; accordingly, we must disagree with the trial court's conclusion that Carl's statements inculpating Shaffer were insufficiently corroborated. Other significant corroboration of both points in the record included proof of the older child's (Tanya's) statement echoing Carl's statement that Shaffer did it, the several domestic disputes between Shaffer and Simmons sufficiently disturbing to require intervention by sheriff's deputies, Shaffer's admission that he struck and bruised Carl's face for urinating on him at a time when the child was not toilet trained, and inculpatory statements by Shaffer and Simmons, each directed against the other, before Deputy Bradford. Also significant was evidence of Shaffer's prior statement, inconsistent with his vague testimony in court, that he saw Carl fall in the utility room.

█ In conclusion, we agree with the State that assuming, *arguendo*, that the evidence adduced did not establish that Shaffer or Sim-

mons caused Carl's injuries, it clearly established that Shaffer and Simmons allowed Carl to be seriously physically injured by nonaccidental means. Furthermore, it cannot seriously be contended that the environment in which the injuries occurred was not injurious to Carl's welfare. We conclude, therefore, that the best interests of this child require that the order of the trial court failing to find abuse and refusing to adjudicate Carl a ward of the court be reversed.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is reversed, and this cause is remanded to the circuit court for further proceedings under the Juvenile Court Act consistent with the views expressed herein.

Reversed.

KARNS and HARRISON, JJ., concur.