*In re* MICHAEL WEBER, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Donna Tarrant (Weber), Respondent-Appellant).

Fifth District   No. 5—87—0310

Opinion filed April 19, 1989.

David V. Grigsby, Public Defender, of Hillsboro, for appellant.

Gregory Grigsby, State's Attorney, of Taylorville (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

On June 10, 1986, a petition for adjudication of wardship was filed in the circuit court of Christian County in which the petitioner sought to have Michael Weber, a child approximately two years of age, declared an abused minor pursuant to the Juvenile Court Act. (Ill. Rev. Stat. 1985, ch. 37, par. 702—4(2).) The petition alleged that Michael was abused because his mother "allowed (or caused) to be inflicted upon the minor physical injury in that the parent allowed (or caused) the minor to be struck repeatedly and that this beating caused several bruises." The petition also requested a "shelter care" hearing. That hearing was held the following day and Michael was placed in "shelter care" with the Department of Children and Family Services. At the adjudicatory hearing, held on December 15, 1986, the State moved to amend the pleadings by adding an additional count, which the trial court allowed over the objection of defense counsel. At that time, the State filed an amended petition for adjudication of wardship which included a second count:

"Count II. Pursuant to ch. 38, sec. 702—4(2)(b), the minor is abused in that the minor is under 18 years of age and whose environment is injurious to his welfare in that the minor repeatedly received unexplained bruises."

A number of witnesses testified at the hearing, including Dorothy Coultas, Michael's grandmother. Mrs. Coultas had obtained weekend visitation rights with Michael when Michael's parents were divorced. Mrs. Coultas and her husband also have custody of Joshua Lynch, Michael's half-brother.

Mrs. Coultas testified that in early May 1986 she discovered bruises on Michael. He had bruises on the side and top of his head, black bruises on his arms and buttocks, and red marks on the back of

his legs. Mrs. Coultas called Donna Tarrant (Weber), Michael's mother, and asked her about the bruises, but Donna was unresponsive.

A week later Mrs. Coultas again found bruises on Michael and photographed them. Still more bruises were found the following week, including 30 to 40 small bruises under Michael's diaper. After again photographing the bruises, Mrs. Coultas contacted Randy Pettus, the Taylorville juvenile officer, and the Department of Children and Family Services, and then took Michael to a doctor for an examination.

Dr. Quat Ngo, a physician specializing in family practice, testified that on June 7, 1986, he examined Michael Weber and found bruises extending from the lower neck down to the buttocks. Dr. Ngo described these bruises as thin, parallel lines that could have been caused by something like a small stick. The doctor stated that there were approximately 20 such lines across the child's back and more on the back of the child's legs. Dr. Ngo further testified that it was unlikely that the bruises were caused by the child falling, someone spanking the child, or by another child four to five years of age, such as Michael's half-brother Joshua, using a stick, since a four- to five-year-old probably lacks the strength to cause those kinds of bruises.

Michael's mother, Donna Jean Tarrant (Weber), testified that Michael had a bruise over his eye which he received when he fell off a toy motorcycle, and that she had also noticed three bruises on the back of his leg, but that she did not know the origin of these bruises. She stated that other than these bruises, Michael had no additional bruises either before or after he visited with Mr. and Mrs. Coultas. Mrs. Tarrant denied that she or her husband, Gary Tarrant, had ever beaten Michael, though Gary had spanked Michael on the rump once. Mrs. Tarrant further stated that even though she bathed Michael daily, she did not see the bruises described by Dr. Ngo or the bruises shown in the photographs taken by Mrs. Coultas and the bruises must have been caused while Michael was at Mrs. Coultas' house.

At the close of all the evidence and after hearing the arguments of counsel, the court found that the child was abused under count II of the amended petition alleging injurious environment. The court was unable to determine, however, who was responsible for abusing the child. The court stated that while there was insufficient evidence to find that the mother, Donna Tarrant, caused the bruises, if she "were properly supervising the situation these bruises could not exist without her knowing that." The ultimate responsibility, stated the court, "goes with the custodian of the child and that is the mother."

On February 24, 1987, a dispositional hearing was held to determine custody of the minor child, Michael Weber. After hearing all the

evidence and arguments of the counsel, the court denied custody to Donna Tarrant and placed Michael with the Illinois Department of Children and Family Services. In announcing its decision, the court stated:

"The statute requires where a minor is found by the court to be neglected or abused under section 2—4, which I did, 'custody shall not be restored to any parents found to be'—I stopped short of that. And yet I think from the evidence we know that somewhere some neglect happened. It places a burden on the party requesting custody to prove fitness. No one stepped forward and indicated how Michael Weber received the injuries that he received. And of course that bothers the court.

There's obviously a priority here that surpasses the interests of Michael. So the court certainly under the circumstances is not going to return the child to the parents at this time. I'm not persuaded that the mother is ready to assume—I honestly feel she believes she's ready. I think in her own mind she feels she is ready and I don't question that. But there's a real question in the court's mind that she is ready.

It's the stated purpose of the Department of Children and Family Services to eventually work the child back into the home with the mother. I have no problem with that.

\* \* \*

And there has been no evidence presented to the court that closes the door on the natural mother. Until that door is closed, I think the Department of Children and Family Services must maintain the custody and guardianship. They must work the child back into the home with the mother if that is to happen.

\* \* \*

And the court in the best interests of Michael at this time I think, given the evidence, must allow the Department to make that attempt.

I'm not optimistic about it totally. But I think the law is that the benefit must be given, every benefit must be given the natural parents to assume their parental responsibilities. I'll allow the Department to try to work Mrs. Weber into that situation.

\* \* \*

With the allegations of physical abuse, I want somebody monitoring the situation."

The respondent raises two issues on appeal. The first is whether the trial court erred in adjudicating the minor as abused under count II of the amended petition. More specifically, is a petition alleging that

the minor repeatedly received unexplained bruises sufficient to sustain a cause of action for injurious environment under section 2—4(2)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 702—4(2)(b))? The second issue raised by respondent is whether the trial court erred in denying custody of the minor to his mother. More specifically, must the trial court find that the mother inflicted abuse on the child before denying custody of the child to her?

The statute at issue here, section 2—4 of the Juvenile Court Act, states:

"Neglected or Abused Minor.

(1) Those who are neglected include any minor under 18 years of age: whose parent or other person responsible for the minor's welfare does not provide the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter, or who is abandoned by his or her parents or other person responsible for the minor's welfare.

(2) Those who are abused include any minor under 18 years of age:

(a) whose parent or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor, \*\*\* or a paramour of the minor's parent:

(i) inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function;

(iii) commits or allows to be committed any sex offense against such minor, as such sex offenses are defined in the Criminal Code of 1961, as amended, and extending those definitions of sex offenses to include minors under 18 years of age;

(iv) commits or allows to be committed an act or acts of torture upon such minor; or

(v) inflicts excessive corporal punishment; or

(b) whose environment is injurious to his or her welfare." Ill. Rev. Stat. 1985, ch. 37, par. 702—4.

The respondent contends that count II of the amended petition for adjudication of wardship improperly stated a cause of action for injurious environment by making allegations of physical abuse, relying on *In re Harpman* (1986), 146 Ill. App. 3d 504, 496 N.E.2d 1242. In *Harpman*, the trial court found that the minors' environment was injurious to their welfare based on an allegation in the petition that the children's father had previously been adjudged unfit because of the sexual abuse of his daughters by a prior marriage. The petition alleged that because of this past abuse of his other children, and his failure to engage in any meaningful therapy, the children of his current marriage were exposed to a substantial risk of sexual abuse, thereby creating an environment injurious to their welfare. The parents argued that, in the absence of any allegation of actual abuse, in the sense of damage or hurt, the petitions failed to state a cause of action. The Fourth District Appellate Court stated that this "contention flies in the face of the clear wording of the statute." (*Harpman*, 146 Ill. App. 3d at 511, 496 N.E.2d at 1246.) The court explained that an injurious environment was formerly part of the allegation of neglect. By amendment in 1982 that section was expanded to include both neglected and abused minors. "Neglected minors" is defined in subsection 1 and "abused minors" is defined in subsection 2. The court went on to state:

"Subparagraph (a) of subsection (2) sets forth five separate forms of abuse in the sense of damage or hurt to a minor. Subparagraph (b), cast in the alternative to subparagraph (a), sets forth injurious environment as a species of abuse in contradistinction to the acts of physical abuse found in subparagraph (a).

It follows as a matter of good pleading that if the sole ground for the petition is an injurious environment, it cannot, and should not, include any allegations of physical abuse." *Harpman*, 146 Ill. App. 3d at 511, 496 N.E.2d at 1246.

While the language used by the court in *Harpman* fully supports the respondent's position, it is clear that such language was not necessary to the decision of the case, and it is therefore mere *dicta*. The holding in *Harpman*, narrowly construed, is that a petition alleging injurious environment need not include allegations of physical abuse. It is sufficient to allege only that the father had been adjudged unfit because of sexual abuse of his daughters by a prior marriage. It was unnecessary for the court to state that allegations

of physical abuse should *never* be included in a petition alleging injurious environment.

It should be noted, however, that the Second District Appellate Court, in a case not cited by the parties, at least partially relied on *Harpman* to uphold a trial court's finding that a child's environment was not injurious to her welfare. (*In re J.H.* (1987), 153 Ill. App. 3d 616, 505 N.E.2d 1360.) While the issue in *In re J.H.* was the weight of the evidence, and not the state of the pleadings, the court cited *Harpman* and noted that "it has been held that sexual abuse is not part of a cause of action for injurious environment." *In re J.H.*, 153 Ill. App. 3d at 631, 505 N.E.2d at 1370.

While the *dicta* in *Harpman* is unequivocal, it is unpersuasive for several reasons. First, prior to 1982, the "injurious environment" language was, as pointed out in *Harpman*, included under the definition of a neglected minor. (Ill. Rev. Stat. 1979, ch. 37, par. 702–4(1)(b).) Under this paragraph, proof of physical abuse was routinely used by the courts to establish an injurious environment. (See, *e.g.*, *In re D.M.C.* (1982), 107 Ill. App. 3d 902, 438 N.E.2d 254 (excessive spanking of minor was sufficient to find that his environment was injurious to his welfare); *In re Johnson* (1981), 102 Ill. App. 3d 1005, 429 N.E.2d 1364 (physical abuse alone will support a finding of neglect); *In re Christenberry* (1979), 69 Ill. App. 3d 565, 387 N.E.2d 923 (evidence of skull fractures and other injuries due to beating was sufficient to sustain finding that environment was injurious to child's health).) When the 1982 amendment expanded this section to include both neglected and abused minors, it borrowed its definitional language from the Abused and Neglected Child Reporting Act (Ill. Rev. Stat. 1979, ch. 23, par. 2053), and was meant to parallel the language contained in that act. 82d Ill. Gen. Assem., House Proceedings, May 18, 1981, at 9 (statement of Representative McClain: "[The amendment] parallels the language *** presently used in the Child Abuse Reporting Act and moves it also into the Juvenile Court Act. That's done because a lot of courts are interpreting from different Acts differently and its inconsistent with the courts' findings"); 82d Ill. Gen. Assem., Senate Proceedings, June 16, 1981, at 56 (statement of Senator Gitz: "[The amendment] makes the definitions in the bill conform to the Abused and Neglected Child Reporting Act").

Indeed, a comparison of the relevant sections in each act reveals that they are, for the most part, identical in all respects but one: the "injurious environment" language is contained in the Juvenile Court Act definition of an abused minor, but that same language is completely absent from the Abused and Neglected Child Reporting Act.

It would appear then, that the legislature consciously chose to retain this language. Moreover, they chose to place this language under the abused minor category, rather than let it remain as part of the neglected minor category. Placement in the abused minor category, in which all the language makes reference to various forms of physical abuse, suggests that an "injurious environment" was meant to encompass types of physical abuse other than those listed elsewhere in the abused minor section. Perhaps, as the petitioners suggest in their brief, the first part of the abuse section focuses on abuse knowingly caused or allowed by a custodial adult, while the second section focuses on situations in which the child's health, safety, and well-being are in danger irrespective of the identity of the person who inflicted the abuse.

■ Second, an environment injurious to a child's welfare has been interpreted by our supreme court, in a different but related statutory section, to include a physically abusive environment. In *In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84, the supreme court held that evidence that a noncustodial father was aware of bruises and cigarette burns on his daughter, and failed to take any action to remedy the situation or protect the child, was sufficient to find that the father was "unfit" under the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(g)). That section provides that unfitness for purposes of adoption includes a person who fails "to protect the child from conditions within his environment injurious to the child's welfare." Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(g).

Finally, in a case decided after section 2—4 of the Juvenile Court Act was amended, the Fifth District Appellate Court held that physical injuries are sufficient to establish an injurious environment. (*In re Simmons* (1984), 127 Ill. App. 3d 943, 469 N.E.2d 215.) In *Simmons*, the minor sustained bruises and a broken leg, but the trial court was unable to determine that the custodial mother or her paramour caused the injuries. This court held that even if the evidence failed to establish who had caused the injuries, it was sufficient to establish that the mother and her paramour had allowed the minor to be seriously injured by nonaccidental means. "Furthermore, it cannot seriously be contended that the environment in which the injuries occurred was not injurious to [the child's] welfare." *Simmons*, 127 Ill. App. 3d at 950, 469 N.E.2d at 219-20.

■ The respondent seeks to have this court follow the *dicta* in *In re Harpman* (1986), 146 Ill. App. 3d 504, 496 N.E.2d 1242, but provides no reasons to do so other than the mere fact that it exists. To do so might compel a judge to allow a child to remain in an envi-

ronment in which he is obviously being physically abused, but where there is insufficient evidence to determine the person responsible for the abuse. Such a result would not only be contrary to the purpose and policy of the Juvenile Court Act (see Ill. Rev. Stat. 1985, ch. 37, par. 701—2(3)(c) (parents' right to custody shall not prevail when the court determines that it is contrary to the best interests of the child); *In re Stilley* (1977), 66 Ill. 2d 515, 520-21, 363 N.E.2d 820, 822 (the essential policy consideration in child neglect and custody cases is the best interests and welfare of the child)), but would also be inconsistent with cases decided under the Act prior to the 1982 amendment, which held that a finding of neglect may be based on unintentional as well as willful disregard of parental duty. *In re B.K.* (1984), 121 Ill. App. 3d 662, 665, 460 N.E.2d 43, 46; *In re Christenberry* (1979), 69 Ill. App. 3d 565, 567, 387 N.E.2d 923, 925; *In re Brooks* (1978), 63 Ill. App. 3d 328, 337, 379 N.E.2d 872, 879.

Therefore we hold that a petition alleging that the minor repeatedly received unexplained bruises is sufficient to sustain a cause of action for injurious environment under section 2—4(2)(b) of the Juvenile Court Act.

█ The respondent next contends that the trial court erred in denying custody of the minor to his mother. Respondent argues that the trial court erroneously relied on the second paragraph of section 5—2(1)(d) of the Juvenile Court Act, which states:

"However, in any case in which a minor is found by the court to be neglected or abused under section 2—4 of this Act, custody of the minor shall not be restored to any parent, guardian or legal custodian found by the court to have caused the neglect or to have inflicted the abuse on the minor until such time as a hearing is held on the issue of the fitness of such parent, guardian or legal custodian to care for the minor and the court enters an order that such parent, guardian or legal custodian is fit to care for the minor." Ill. Rev. Stat. 1985, ch. 37, par. 705—2(1)(d).

The respondent asserts that this paragraph is only applicable where the court finds that the parent has inflicted the abuse. Therefore, since the court explicitly stated that it could not determine who was responsible for the abuse of the child, the court should not have denied custody to the mother. In support of her position the respondent cites *In re Brown* (1980), 87 Ill. App. 3d 1074, 410 N.E.2d 486, in which the appellate court reversed a finding of the trial court that a noncustodial parent was an unfit person under section 1(D)(g) of the Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(g)), which

provides that unfitness includes a failure to protect the child from conditions within his environment injurious to the child's welfare. The appellate court held that the father's failure to protect his daughter from the bruises and burns she received did not make him an unfit parent.

As the petitioner points out, however, respondent's reliance on *Brown* is misplaced. The respondent cites the appellate decision of *Brown*, which was reversed by the Illinois Supreme Court in *In re Brown* (1981), 86 Ill. 2d 147, 427 N.E.2d 84. The supreme court held that the trial court properly terminated the parental rights of the father for his failure to protect his daughter from an environment which was injurious to her welfare. *In re Brown* (1981), 86 Ill. 2d at 153, 447 N.E.2d at 87.

In any event, *Brown* is not dispositive of the issue in the instant case, since here no termination of parental rights occurred. What is at issue in the instant case is whether the trial court's dispositional order was proper under section 5—2(1)(d). Resolution of this issue requires an examination of subparagraph (d) in its entirety, not merely the second paragraph quoted by the respondent. The first paragraph of section 5—2(1)(d) states:

> "A minor under 18 years of age found to be neglected under section 2—4 may be (1) continued in the custody of his or her parents, guardian or legal custodian; (2) placed in accordance with section 5—7; or (3) ordered partially or completely emancipated in accordance with the provisions of the Emancipation of Mature Minors Act." Ill. Rev. Stat. 1985, ch. 37, par. 705—2(1)(d).

When the two paragraphs of subparagraph (d) are read together, it is clear that the second paragraph modifies the first. The first paragraph sets out the kinds of dispositions available to the court, one of which is to allow the child to remain in the custody of the parents. The second paragraph removes this option when the court finds that the parent is responsible for abusing the child. This paragraph does not, however, affect the other possible dispositions available to the judge, including placement in accordance with section 5—7. This section provides that an abused minor may be placed under the care of the Department of Children and Family Services if the court finds that parents are unfit or unable to

> "care for, protect, train or discipline the minor or are unwilling to do so, and that appropriate services aimed at family preservation and family reunification have been unsuccessful in rectifying the conditions which have led to such a finding of

unfitness or inability to care for, protect, train or discipline the minor, and that it is in the best interest of the minor to take him from the custody of his parents." Ill. Rev. Stat. 1985, ch. 37, par. 705—7(1).

At the dispositional hearing, Donna Tarrant testified that she and her husband had been attending mental health sessions aimed at improving their marriage and their parenting skills. The court also heard testimony from a case worker for the Department of Children and Family Services indicating that the person in charge of these counseling sessions stated that she couldn't recommend that the child be returned home because she had not seen the Tarrants enough at the mental health center to believe that enough progress or change had occurred to improve conditions in the home. Donna Tarrant also testified that she missed several of the counseling sessions and that she eventually stopped attending the sessions because she did not feel she needed any more counseling. Linda McGuire, a homemaker employed by the Department of Children and Family Services, was responsible for supervising the weekly home visits between Michael and his mother which the Department had scheduled upon Michael being placed in their custody. She stated that on four or five occasions she brought Michael to his mother's home for a scheduled visit but found no one at home.

After hearing the evidence and arguments of counsel, the court indicated that it did not believe that the mother was ready to assume her parental duties. The court found that it was in the best interests of the child to remain in the custody of the Department of Children and Family Services so that the Department could work with the mother to help obtain custody of the child. The court further stated that it wanted the Department of Children and Family Services to monitor the situation because of the "allegations of physical abuse."

It appears that the evidence adduced at the hearing, as well as the findings of the court, are sufficient to satisfy the statutory requisites under section 5—7. While the findings of the court did not mimic the statutory language in all regards, the evidence is sufficient to hold that the statutory requirements were met.

Furthermore, it is not at all clear from the record that the trial court relied, as the respondent claims, on the second paragraph of section 5—2 in denying custody of the child to the mother. In announcing its decision, it appears that the court began by paraphrasing the second paragraph of section 5—2(1)(d):

"The statute requires where a minor is found by the court to

be neglected or abused under section 2—4, which I did. Custody shall not be restored to any parents found to be. I stopped short of that."

This language suggests that the trial court was aware that the second paragraph of section 5—2(1)(d) requires a finding that the parent inflicted the abuse. The court recognized that it had not made such a finding. It is inferable that the court, upon recognizing that the paragraph did not apply, did not then apply it. The court went on to state, however: "And yet I think from the evidence we know that somewhere some neglect happened. It places a burden on the party requesting custody to prove fitness." The court's reference to a "burden to prove fitness" suggests, on the other hand, that the court may indeed have been applying the second paragraph of section 5—2(1)(d). This paragraph requires that before custody may be restored to an abusing parent, a hearing must be held to determine the fitness of the parent. However, absent any other indications in the record that the court may have misapplied section 5—2, and inasmuch as it is apparent that the trial court's primary consideration was the child's welfare, the court's finding should not be disturbed. (See *In re Stilley* (1977), 66 Ill. 2d 515, 521, 363 N.E.2d 820, 823 (upholding trial court's decision to deprive parents of custody where it was not palpably erroneous or against the manifest weight of the evidence, and where there was "no evidence that the court failed to consider the child's welfare as its primary consideration").) In all procedures under the Juvenile Court Act, "[t]he parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child." (Ill. Rev. Stat. 1985, ch. 37, par. 701—2(3)(c).) Therefore, we hold that the trial court did not err in denying custody of the child to the mother.

Judgment of the trial court is affirmed in all respects.

Affirmed.

LEWIS and RARICK, JJ., concur.