812

*In re* JEROME F. *et al.*, Minors, Respondents-Appellees (The People of the State of Illinois, Petitioner-Appellee, v. Cynthia N., Respondent-Appellant).

First District (1st Division)   No. 1—99—2106

Opinion filed May 21, 2001.—Rehearing denied August 29, 2001.—Modified opinion filed September 10, 2001.

Rita A. Fry, Public Defender, of Chicago (Pamela Pfrang, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Nancy Grauer Kisicki, Assistant State's Attorneys, and Gillian D. Marshall, law clerk, of counsel), for the People.

Patrick T. Murphy, Public Guardian, of Chicago (Charles Golbet and Deborah Pergament, of counsel), for other appellees.

JUSTICE COHEN delivered the opinion of the court:

The State filed a petition for adjudication of wardship of the respondent mother's four children. The petition alleged that the respondent had abused the children by creating a substantial risk of physical injury to them through other than accidental means and that the respondent had neglected them, primarily due to her use of cocaine. One child allegedly was born with cocaine in his system.

An adjudicatory hearing was held at which the respondent was not present. At the close of the hearing, the juvenile court found the allegations of abuse and neglect proven. A dispositional hearing followed immediately. The court adjudged the children wards of the court, finding the respondent unable, unwilling and unfit to care for her children at that time.

The respondent argues that these determinations must be reversed and new hearings held because she did not receive proper notice. The respondent also argues that the finding of neglect should be reversed because the evidence indicated that it was a child other than the one alleged in the petition who may have been born with cocaine in his system. She further argues that the court's finding that she abused her children was manifestly erroneous, because the finding was based on an incident that all the evidence indicated was an accident. We affirm.

## BACKGROUND

The respondent is the mother of four children: Genesis, Jerome, Prentiss and Danita. The respondent's family came to the attention of the Illinois Department of Children and Family Services (DCFS) by way of a hotline call after Genesis was taken to Mercy Hospital with a burn on her face. At the time, Genesis was 7, Jerome was 5, Prentiss was 3 and Danita was 10 months old. On December 2, 1998, Kimberly Davis, a DCFS worker, went to talk with the respondent and check on the children. Davis saw a burn mark on Genesis' cheek and one on Jerome's chest. Davis asked the respondent about the burns. She told Davis that Jerome had been playing with the iron and that Genesis went over to take the iron away from him and put it away; however, Genesis dropped the iron causing burns to herself and Jerome.

Davis asked Genesis how the burn occurred, and Genesis gave the same account—"that her little brother was ironing. She took the iron away from him. She wrapped the cord around the iron and the iron fell and hit against her face." Davis then spoke with Jerome, who also said that the burns occurred when Genesis accidentally dropped the iron. The children said that their mother was there when the accident happened. Davis did not see other signs of abuse or neglect on the

children, although there had once been an allegation that the respondent had hit one of the children with a hanger.

Davis testified that the children seemed "very bonded" with the respondent, and that she seemed to care about the children. However, Davis related, when the respondent learned that DCFS was taking temporary custody, the respondent said "she was kind of glad that they were taking custody because she need[ed] to get herself together."

Angela Holman, a worker at Chicago Commons, had referred the respondent to drug treatment programs on multiple occasions. The respondent had completed only one of the referrals. On December 4, 1998, Holman spoke with the respondent about the respondent's drug problem. The respondent admitted that she was still using cocaine, explaining that it was hard to kick the habit. Holman knew that Prentiss had been born with cocaine in his system. Holman informed the respondent that she had failed drug tests in her treatment program. The State introduced records from the respondent's treatment program at the adjudicatory hearing.

Holman said that when she went to the respondent's house it was usually filthy. The couch was infested with bugs and sometimes had food on it. The floors were sticky. The dishes were piled up. Sometimes one of the children would drop food on the dirty floor then pick it up and eat it. The respondent said that she had trouble doing housework because of a foot problem. Despite the deficiencies in the children's environment, Holman never made a call to the child abuse hotline because the respondent had a brother named Larry who would come over from time to time and assist with the housework and care of the children. The children seemed to have a good relationship with the mother.

Tamika Nash was a worker from Chicago Commons who took over the case from Ms. Holman in February 1999. She gave the respondent another referral for a drug treatment program, but the respondent did not show up. The respondent said that she had forgotten, but Nash told the court that she wrote the date down for the respondent and later sent her a reminder letter. The respondent was supposed to come in to Chicago Commons for another referral, but never did. Once again, respondent said that she forgot. Nash had also recommended that the respondent take a parenting class. The respondent did not do so.

Nash talked with the children's father, who at the time was incarcerated. He said that he would see if there were any parenting classes offered in prison. At the hearing, the father testified that he had enrolled in a drug treatment program in prison and was signed up to take a parenting class soon.

The State introduced records from Michael Reese Hospital relating to the birth of Prentiss. According to the records, there was cocaine from the mother affecting the newborn. The records indicated that a call had been made to DCFS because the baby was positive for cocaine.

DCFS informed the respondent that it was initiating proceedings to take custody of her children. The adjudicatory and dispositional hearings were scheduled for January 27, 1999, and service on the respondent was ordered. On January 27, the juvenile court judge appointed a public defender to represent the respondent and continued the hearings until April 16, 1999. The respondent was present on April 16, but the hearings were continued again until June 3, 1999. Service on the respondent was ordered, but she claims that she never received service.

The hearings went forward on June 3, 1999, despite the fact that the respondent was not present. At the close of the adjudicatory hearing, the public defender admitted that the respondent had a drug problem that might justify a finding of neglect, but he asked that there be no finding of abuse. The judge nevertheless found the children abused because of "substantial risk of physical injury." After the dispositional hearing, the judge found that the mother was unable, unwilling and unfit to care for her children at that time. The children were placed under the guardianship of DCFS.

The respondent now appeals. She contends that new hearings must be ordered because she did not receive the notice required by Illinois law and/or the United States Constitution (U.S. Const., amend. XIV). She also argues that, on the merits, the trial court erred in ruling as it did. The respondent points out that, in the petition for wardship, Jerome rather than Prentiss was alleged to be the child born with cocaine in his system. She also argues that the abuse finding was erroneous because accidental injuries are not considered abuse.

## ANALYSIS

### I. Notice

#### A

■■ The Juvenile Court Act of 1987 (the Act) requires notice to all parties-respondent before a dispositional hearing may proceed. 705 ILCS 405/2—22(2) (West 1998). The Act, as amended in 1998, states that notice shall be in accord with Supreme Court Rule 11 (145 Ill. 2d R. 11). 705 ILCS 405/2—22(2) (West 1998). Rule 11 allows for service on a party's attorney. 145 Ill. 2d R. 11. Here, the respondent has not claimed that her attorney did not receive notice of the proceedings. The respondent's attorney was present on the date of the hearings.

"The mother had a duty to follow the progress of her case and to learn from her attorney the date of the next hearing." *In re C.L.T.*, 302 Ill. App. 3d 770, 778, 706 N.E.2d 123, 129 (1999).

Furthermore, even though the respondent may not have received personal service, we find that the respondent had actual notice of the proceedings. She was present on April 16, 1999, when the court set the date for the hearings.

> "THE COURT: All right. We'll make this a date that's convenient for all the parties. Let's see. How about the third of June?
>
> June third at nine o'clock. That will be for trial and dispositional hearing. Anything further?
>
> * * *
>
> Then I'll see the parties here at nine o'clock on June third for trial and dispositional hearing."

Because the respondent was present when the hearing date was scheduled, we cannot say that she lacked notice of the hearings. *In re D.R.*, 307 Ill. App. 3d 478, 482, 718 N.E.2d 664, 666 (1999).

### B

The respondent next claims that the 1998 amendment to the Act allowing service on her attorney under Rule 11 is unconstitutional. 705 ILCS 405/2—22(2) (West 1998). She argues that in order for notice to be adequate under the United States and Illinois Constitutions, it must be served on her personally. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2.

■ We find that the respondent has waived her constitutional challenge on appeal by failing to raise it in the lower court. *Villareal v. Peebles*, 299 Ill. App. 3d 556, 560, 701 N.E.2d 145, 147 (1998) ("Constitutional issues not presented to the trial court are deemed waived and may not be raised for the first time on appeal"). The narrow exception to the waiver rule involving a criminal defendant's constitutional challenge to a statute under which he was convicted does not apply here. *People v. Starnes*, 273 Ill. App. 3d 911, 913-14, 653 N.E.2d 4, 6 (1995), refusing to extend *People v. Bryant*, 128 Ill. 2d 448, 454, 539 N.E.2d 1221, 1224 (1989).

## II. The Drug-exposed Infant

■ The relevant portions of the Act's definition of "neglected minor" are:

> "(1) Those who are neglected include:
>
>> (a) any minor under 18 years of age who is not receiving the proper or necessary support, education as required by law, *** or other care necessary for his or her well-being, including adequate food, clothing and shelter ***; or

(b) any minor under 18 years of age whose environment is injurious to his or her welfare; or ·

(c) any newborn infant whose blood, urine or meconium contains any amount of a controlled substance *** or a metabolite of a controlled substance, with the exception of controlled substances or metabolites of such substances, the presence of which in the newborn infant is the result of medical treatment administered to the mother or the newborn infant[.]" 705 ILCS 405/2—3(1) (West 1998).

In this case, the petition for wardship alleged that Jerome was born with cocaine in his system. However, the evidence introduced at the adjudicatory hearing indicated that Prentiss was the child who tested positive for cocaine at birth. At the hearing, the parties discussed Prentiss and no mention was made of Jerome having been exposed to cocaine. The respondent argues that we should reverse the finding of neglect as to Jerome.

■ This problem, apparently a clerical error, is waived because it is raised for the first time on appeal. "All defects in pleading, either in form or substance, not objected to in the trial court are waived." 735 ILCS 5/2—612(c) (West 1998). By failing to object below to the variance between the pleadings and proof, the respondent has waived any such defect. *Nikolopulos v. Balourdos*, 245 Ill. App. 3d 71, 76, 614 N.E.2d 412, 416 (1993). Had the respondent brought the discrepancy in the pleadings to the attention of the trial court, the matter easily could have been corrected.

Even were the issue not waived, however, there would be no need to reverse the neglect finding as to Jerome. The court found that Prentiss, not Jerome, was a drug-exposed infant. There is no indication that the court or either of the parties thought that there was evidence that Jerome was a drug-exposed infant when the court made its ruling that Jerome was neglected.

The court may take instances of neglect toward one child as evidence of an injurious environment for the child's siblings. *In re K.G.*, 288 Ill. App. 3d 728, 736, 682 N.E.2d 95, 100 (1997). In this case, the court took the fact that one child had been born with cocaine in his system as evidence of an injurious environment for both that child and his siblings. Logically, it does not really matter whether the cocaine-exposed infant was Jerome or Prentiss. The court found that the fact that one of them had been born cocaine-exposed supported a finding of neglect as to all of them under subsection (b) of section 2—3(1), the "injurious environment" provision. 705 ILCS 405/2—3(1)(b). (West 1998). Neither the finding of neglect as to Jerome nor the finding as to Prentiss was based solely on subsection (c) of section

2—3(1), the "drug-exposed infant" provision. 705 ILCS 405/2—3(1)(c) (West 1998).

### III. The Finding of Abuse

■ The definition of "abused minor" reads in pertinent part:

"(2) Those who are abused include any minor under 18 years of age whose parent or *** any individual residing in the same home as the minor, or a paramour of the minor's parent

(i) inflicts, causes to be inflicted, or allows to be inflicted upon such minor physical injury, by other than accidental means, which causes death, disfigurement, impairment of physical or emotional health, or loss or impairment of any bodily function;

(ii) creates a substantial risk of physical injury to such minor by other than accidental means which would be likely to cause death, disfigurement, impairment of emotional health, or loss or impairment of any bodily function." 705 ILCS 405/2—3(2) (West 1998).

■ The respondent argues that the finding of abuse must be reversed because it was based on the accident with the iron and the statute defines abuse as something "by other than accidental means." 705 ILCS 405/2—3(2) (West 1998). We note that even if the finding of abuse were to be reversed, the ultimate outcome would remain the same. The findings of neglect provide a sufficient basis for DCFS taking custody. See 705 ILCS 405/2—23 (West 1998). Therefore, this question may be moot. *In re R.M.*, 307 Ill. App. 3d 541, 549, 718 N.E.2d 550, 555 (1999). We need not reach the issue of possible mootness, however, for we are compelled by the evidence not to disturb the finding of abuse.

The circuit court's findings need only be supported by a preponderance of the evidence. *In re Simmons*, 127 Ill. App. 3d 943, 948, 469 N.E.2d 215, 219 (1984). We will reverse those findings only if they are against the manifest weight of the evidence. *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896 (1991).

The Act classifies as "abuse" not only the injuring of a child by other than accidental means, but also the creation of a substantial risk of injury to the child by other than accidental means. 705 ILCS 405/2—3(2) (West 1998). We agree with the respondent that the record shows that the children being burned with the iron was an accident. Accordingly, since the injuries themselves were accidental, there are no grounds for a finding of abuse under section 2—3(2)(i). However, the court appears to have made the finding of abuse based on section 2—3(2)(ii), reasoning that the children being placed at risk of injury was not accidental.

The record does not conclusively answer the question of how the children came to be using the iron in the first place. Evidently the court concluded that the respondent consciously created a substantial risk to her small children by intentionally allowing them to use the iron. This is not the only possible conclusion that the court could have drawn from the evidence, but the interpretation adopted by the court is not against the manifest weight of the evidence. The iron burns, in conjunction with the squalid conditions in the respondent's home and her refusal to address her cocaine addiction, are sufficient to support a finding of abuse.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

McNULTY, P.J., and TULLY, J., concur.