(No. 48536.–

*In re* FAITH A. STILLEY, a Minor.—(The People of the State of Illinois, Appellant, v. Rochelle Stilley, Appellee, *et al.* (Augustus M. Scott, Appellant).)

*Opinion filed May 20, 1977.*

516

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Joan D. Levin, of Chicago, for appellant Scott.

James J. Doherty, Public Defender, of Chicago (Frances G. Sowa and Marc Fogelberg, Assistant Public Defenders, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The State and Augustus M. Scott appeal from the appellate court's reversal of the circuit court's finding of neglect entered against Scott and Rochelle Stilley. The State initiated the cause on October 26, 1973, when it filed a petition for adjudication of wardship. The State filed the petition on behalf of four-year-old Faith Stilley, who had been found by police wandering the streets at 11 p.m. on October 22, 1973, and against the natural but unmarried parents, Rochelle Stilley and Augustus Scott. (By order of the court Scott was found to be the natural father.) On October 26, 1973, the court gave temporary custody to the guardianship administrator of Illinois and directed the guardian not to place Faith with either parent without the permission of the court.

The issue is whether the appellate court properly found the circuit court's determination of neglect to be against the manifest weight of the evidence. *In re Stilley* (1976), 37 Ill. App. 3d 193.

The State's bill of particulars alleged that the child had been wandering the streets, was repeatedly left in the care of others by the mother, who sometimes failed to

return, was subject to abuse physically, and was emotionally disturbed; that the mother had been admitted to a mental health center; and that neither the mother nor father was able to care for the child.

Faith Stilley was born August 8, 1969, while Scott and Stilley were living together. Testimony evidenced that Stilley became a drug addict during this period of cohabitation, 1968 through 1971, and that Scott was in prison for a year (1972). After 1971, Faith stayed with Rochelle Stilley.

Acquaintances who had met Stilley at the methadone treatment center where she was employed as a counselor testified that she had engaged in acts of prostitution and taken drugs. Stan Surma said Stilley had injected heroin in his presence around the end of March 1973 when she was still a counselor. He and Tina Ende both testified they had taken care of Faith from time to time during the summer of 1973. Ende also said that on one occasion the police brought Faith to her house because Faith did not know where her mother was.

Dolores Luchene testified Stilley had admitted using cocaine for the first time in October 1973. Testimony by Luchene and David Nolan showed that they cared for Faith during October 1973, while they were living together, and, on one occasion, Stilley had phoned them at midnight to ask them to pick Faith up at a bar or restaurant where Stilley had a prospect on the line. They said she indicated there was a lot of money at stake. Nolan added that Stilley had quit her job as counselor in the fall of 1973.

Rochelle Stilley denied she was an addict at the time of Faith's temporary disappearance or that she had engaged in prostitution then. She said the last time she had any drug was on October 24, 1973, and that last drug was methadone; and that for the two years previous she had taken only methadone. She admitted she had been an addict and had engaged in acts of prostitution earlier but

not during the time she had Faith. On the stand she stated she had been in the Tinley Park Mental Health Center for five days in September and again for five days in November of 1973. On the latter occasion she was hospitalized for a detoxification-related illness.

While detoxifying from methadone during the fall of 1973, Stilley arranged to have a bus drop Faith off at the home of Rochelle Stilley's 86-year-old maternal grandmother, Mrs. Agnes Wolnik. It was from Mrs. Wolnik's home that Faith wandered before she was picked up by police. Rochelle Stilley stated that on the night of October 22, 1973, she went to Mrs. Wolnik's home and, upon not finding Faith there, assumed she was staying with relatives across the street from Mrs. Wolnik. She did not check. In the morning she contacted police.

The circuit court also heard testimony from a clinical psychologist who examined Faith two months prior to trial and found her to have "inadequate parenting." Although Faith was bright, she was "anxious and infantile," the psychologist said. The psychologist admitted that placement in foster homes, as Faith had been, could have a disruptive effect on a child.

Pursuant to sections 2—4 and 5—7 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, pars. 702—4(1), 705—7(1)), the circuit court of Cook County found Faith to be neglected and the parents to be unfit. Both parents waived the dispositional hearing. Faith was then placed under the guardianship of Richard Laymon, guardianship administrator of the Department of Children and Family Services. Further, the guardian was ordered not to place the child with either parent without court approval. On appeal, the appellate court, with a dissent, reversed the circuit court's decision and directed that Faith be returned to Rochelle Stilley. 37 Ill. App. 3d 193.

Under the Juvenile Court Act a child is neglected if his or her support, educational, medical or "other remedial" needs are not met or if the child's "environment is

injurious to his welfare." (Ill. Rev. Stat. 1975, ch. 37, par. 702—4(1).) Such determination of neglect is, of course, in the province of the circuit court, but it is not an easy determination. Necessarily, it varies with each case. In general, neglect "is the failure to exercise the care that the circumstances justly demand. It embraces wilful as well as unintentional disregard of duty." (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624.) *But* neglect "is not a term of fixed and measured meaning. It takes its content always from specific circumstances, and its meaning varies as the context of surrounding circumstances changes." *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 624.

Given the varying circumstances of neglect cases, the trial court must have broad discretion to reach a just determination. (*Rodely v. Rodely* (1963), 28 Ill. 2d 347, 350; *People ex rel. Bukovich v. Bukovich* (1968), 39 Ill. 2d 76, 83.) Only where there has been an abuse of discretion or the judgment has been against the manifest weight of the evidence should the decision be disturbed on appeal. The delicacy and difficulty of child-custody and child-neglect cases justify the burden of responsibility placed on the trial court and the ensuing deference which must be given to the trial court. The trial court has the opportunity to observe the demeanor and conduct of parties and witnesses. "We recognize *** that in viewing a judgment of a trial court respectful weight must be given the consideration that the trial court had the opportunity of observing the witnesses." (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 210.) "This is a vital factor in evaluating the correctness of [the trial judge's] determination. We should not disturb his findings unless they are palpably against the weight of the evidence." *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 566-67.

Although three of the cases cited above can be distinguished because they involved child-custody disputes arising after divorces, the essential policy consideration is

the same as in the instant case: the best interests and welfare of the child. Indeed, this is the standard to be applied in child-neglect and custody cases. *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201. See also *People ex rel. Noonan v. Wingate* (1941), 376 Ill. 244, and *Miezio v. Miezio* (1955), 6 Ill. 2d 469.

In the case before us, the trial court found neglect (Ill. Rev. Stat. 1973, ch. 37, par. 702—4) and then proceeded to a disposition under section 5—2(1)(c) of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—2(1)(c)): "A minor under 18 years of age found to be neglected under Section 2—4 may be (1) continued in the custody of his parents, guardian or legal custodian, or (2) placed in accordance with Section 5—7." (Section 5—7 (Ill. Rev. Stat. 1973, ch. 37, par. 705—7) provides for the care and placement of a child once the court finds the parents unfit or unable to properly care for the child.) The temporary custody order of October 26, 1973, was vacated. Upon both parents' waiver of the dispositional hearing, the court appointed the guardianship administrator as the proper guardian of Faith. It also ordered the guardian not to give the child to either parent without leave of the court. Ill. Rev. Stat. 1973, ch. 37, par. 705—7(5).

We believe the disposition of the case by the circuit court was proper under the statutes and consistent with this court's holdings. The trial court's decision was not palpably erroneous, nor was it against the manifest weight of the evidence. The trial court was able to observe the parties and witnesses and found more credence in the testimony of the State's witnesses than in the testimony of the mother, Rochelle Stilley. Hence the finding of neglect and the deprivation of custody were correct. There is no evidence that the court failed to consider the child's welfare as its primary consideration. The court fulfilled its function and duty, "as *parens patriae,* to protect those who have no other lawful protector" and exercised its

"inherent power to deprive [the parents] of custody and appoint a suitable person to act as guardian." *People ex rel. Ryan v. Sempek* (1958), 12 Ill. 2d 581, 584.

We find nothing in the record to warrant a reversal of the circuit court. The judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*