*In re* T.D. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Junior Davis, Respondent-Appellant).

Fourth District   No. 4—88—0595

Opinion filed March 17, 1989.

Jon C. Baxter, of Decatur, for appellant.

Larry R. Fichter, State's Attorney, of Decatur, and Robert W. Mueller, of Springfield (Kenneth R. Boyle and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

David L. Massey, of Decatur, guardian *ad litem*.

JUSTICE LUND delivered the opinion of the court:

On July 13, 1988, the circuit court of Macon County entered an order finding T.D. and S.D. to be neglected and abused minors. They were subsequently placed in the custody and guardianship of the Department of Children and Family Services (DCFS). DCFS was authorized to place the minors in the temporary custody of their mother. Respondent Junior Lee Davis, their father, now appeals. We affirm.

On February 17, 1988, a juvenile petition was filed alleging that T.D., a female born in June 1976, and S.D., a female born in April 1974, were abused and neglected as set forth in the Juvenile Court Act of 1987 (Ill. Rev. Stat. 1987, ch. 37, par. 801—1 *et seq.*). The petition specifically alleged in count I that the minors' environment was injurious to their welfare. Counts II and III alleged the minors were abused because respondent committed various sex offenses on S.D. Counts IV and V alleged the minors were abused because their mother was aware of this conduct and did not stop it.

At the same time, respondent was arrested and charged with the criminal offenses alleged in counts II and III. He was subsequently acquitted of these criminal allegations by a jury.

The juvenile hearing commenced with the testimony of Janelle Beedle, a special education instructor with the Decatur school system. She testified that S.D., one of her students, suffers from a learning disability. On February 15, 1988, a handout concerning sexual abuse

was passed out. S.D. was particularly interested and asked a number of questions. Later, when Beedle was alone with S.D., she asked S.D. if there was a problem. S.D. indicated she was the person being abused. Beedle and S.D. then met with the guidance officer. S.D. stated she wished to speak with her mother one more time to see if she could get it stopped.

The next day, S.D. told Beedle her mother told her to tell. They then met with the guidance officer and representatives of the police and DCFS. S.D. told them she was afraid to take baths because she was being touched by respondent. She said her mother was aware but was beaten up when she tried to stop it.

S.D., 14 years of age, testified outside the presence of her parents. She stated respondent gave her the "bad touch" while she was in bed. Respondent had just taken S.D.'s mother to work. He then instructed her brother, N.D., to go do the laundry. Respondent approached S.D.'s bed, pulled her pants down, and placed his finger in her vagina. T.D. and her brother A.D. were asleep in the bed at the time.

S.D. also stated that at other times, respondent has entered the bathroom when she was taking a bath. He made her bend over, and then he would spread her vagina apart and look in it. At this time, her mother was at work, and the other children were outside. She testified that in the past she had told her mother about other bad touchings, and her mother said she would talk to respondent but could not do much about it.

On cross-examination, she acknowledged respondent has been strict with her. He did not want her running the streets and wanted her to complete school. She also denied seeing a Larry Whitelow. Her parents were divorced, but respondent had come back to live with them. She admitted wanting respondent out of the house. She also indicated she felt respondent was strict with her but not with the others.

Pam Waterman is a child protective service investigator for DCFS. On February 16, she was called to interview S.D. She related S.D.'s statement to her, which corresponded with S.D.'s testimony, except that S.D. told her that respondent would occasionally put his finger in her vagina when he had her bent over in the bathroom. She also interviewed T.D. T.D. told Waterman that one time she saw respondent pull down S.D.'s pants and put his finger in her vagina. She also said respondent would come in when she was taking a bath, have her bend over, and check her out.

Larry Moorehead, a Decatur police officer, interviewed Courtney

Davis, the children's mother. She told him that S.D. first told her of a problem with respondent fondling her about five years ago. She also stated that on February 15, S.D. told her she was going to tell somebody about respondent. Courtney told S.D. this would create family problems. Further, N.D. and T.D. had also talked with her about respondent bothering S.D. She told S.D. she could not control respondent in this regard.

N.D. testified he did the laundry every weekend. From the laundry room, he had an unobstructed view of S.D.'s bedroom. He never saw respondent go into the bedroom for a long time. He also saw Larry Whitelow over at the house after his parents went to work. One time, he saw Whitelow kissing S.D. while having his hand down her pants.

On cross-examination, N.D. admitted being close to his father. He also acknowledged telling the police that he saw respondent go into the bathroom when the girls were taking a bath and hearing them yell at him to get out. He admitted that on February 16, he told the police that he saw respondent go into S.D.'s bedroom and stay there for five minutes. He explained he was mistaken in this latter statement.

Respondent is 40 years old. He and Courtney were divorced in 1986. He testified he moved back in April 1987 to help Courtney raise S.D. He denies physically disciplining the children. Since the divorce, he has left that up to Courtney. He is concerned about S.D. because she likes to run the streets and associate with members of gangs. S.D. does not like discipline and has a history of telling stories. He denies ever sexually touching S.D.

Courtney Davis stated the first complaint S.D. made to her was on February 15. She does not remember any such other complaints. On cross-examination, she acknowledged making her earlier statement to the police. She said she disregarded those earlier complaints because she had seen no indication of that type of problem.

The court found the minors were abused and neglected. It subsequently placed them with DCFS with the authorization they be placed with their mother since respondent had moved out of the house. It also entered a protective order prohibiting respondent from visitation with the minors unless representatives of DCFS were present and the minors consented to the visitation.

Respondent appeals, alleging: (1) the juvenile petition should have been dismissed pursuant to the doctrine of collateral estoppel; and (2) the court's decision was against the manifest weight of the evidence. We disagree and affirm.

Prior to the hearing, respondent had filed a motion to dismiss the juvenile petition, which was denied. The motion was based on the fact that the sexual acts, which he allegedly committed on S.D. and which were contained in the juvenile petition, were the exact same acts for which he was criminally prosecuted and acquitted. Respondent maintains that since the jury must necessarily have found he did not commit those acts in the criminal case, then the court, in the juvenile case, is bound by that determination pursuant to the doctrine of collateral estoppel, and the juvenile case should have been dismissed.

■ Our supreme court has addressed the topic of collateral estoppel numerous times and continues to refer to the definition it gave in *Hoffman v. Hoffman* (1928), 330 Ill. 413, 417, 161 N.E. 723, 725-26, where it stated:

> "Where some controlling fact or question material to the determination of both causes has been adjudicated in the former suit by a court of competent jurisdiction and the same fact or question is again at issue between the same parties, its adjudication in the first cause will, if properly presented, be conclusive of the same question in the later suit, irrespective of the question whether the cause of action is the same in both suits or not. *** [I]t must appear by the record of the prior suit that the particular controversy sought to be construed was necessarily tried and determined,—that is, if the record of the former trial shows that the verdict could not have been rendered without deciding the particular matter it will be considered as having settled that matter as to all further actions between the parties *** ."

The doctrine applies to criminal, as well as civil, proceedings. *People v. Grayson* (1974), 58 Ill. 2d 260, 265, 319 N.E.2d 43, 46.

■ In the criminal prosecution, the jury determined that the State did not prove beyond a reasonable doubt that respondent had committed the charged offenses. However, in the proceeding under the Juvenile Court Act, the State need only prove that respondent committed these offenses by the lesser, civil burden of a preponderance of the evidence. (*In re Prough* (1978), 61 Ill. App. 3d 227, 232, 376 N.E.2d 1078, 1082.) It is this difference in the required burden of proof which makes it apparent the doctrine is inapplicable to the present case. It is quite conceivable that a fact finder could be convinced by a preponderance of the evidence that a fact occurred while, at the same time, not being convinced beyond a reasonable doubt that it occurred. Thus, a finding of not guilty in a criminal case does not preclude a civil proceeding based on the same allegations. *Everly v.*

*Chicago Police Board* (1983), 119 Ill. App. 3d 631, 640, 456 N.E.2d 992, 998; *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 908, 420 N.E.2d 618, 624.

Respondent next argues the court's findings of abuse were incorrect. He asserts S.D.'s testimony was unbelievable and should have been disregarded.

■ In neglect and abuse proceedings, the State has the burden of proving its case by a preponderance of the evidence. (*Prough*, 61 Ill. App. 3d at 232, 376 N.E.2d at 1082.) The essential policy consideration, and the standard to be applied, is the best interests and welfare of the child. (*In re Stilley* (1977), 66 Ill. 2d 515, 520-21, 363 N.E.2d 820, 822.) It is well settled that a court's finding of neglect or abuse is not to be reversed unless it is against the manifest weight of the evidence. (*Stilley*, 66 Ill. 2d at 520, 363 N.E.2d at 822; *In re Simmons* (1984), 127 Ill. App. 3d 943, 948, 469 N.E.2d 215, 219.) As our supreme court explained:

> "The delicacy and difficulty of child-custody and child-neglect cases justify the burden of responsibility placed on the trial court and the ensuing deference which must be given to the trial court. The trial court has the opportunity to observe the demeanor and conduct of parties and witnesses. 'We recognize *** that in viewing a judgment of a trial court respectful weight must be given the consideration that the trial court had the opportunity of observing the witnesses.' (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 210.) 'This is a vital factor in evaluating the correctness of [the trial judge's] determination. We should not disturb his findings unless they are palpably against the weight of the evidence.' *Giacopelli v. Florence Crittenton Home* (1959), 16 Ill. 2d 556, 566-67." *Stilley*, 66 Ill. 2d at 520, 363 N.E.2d at 822.

In the case at bar, the court believed the testimony of S.D. and disregarded that of respondent. Others may have weighed the evidence differently and reached a different conclusion. However, that is not the question. Our sole concern is whether there is sufficient evidence to support the trial court's findings. We hold there is.

Affirmed.

SPITZ and GREEN, JJ., concur.