561 N.E.2d 1269 (1990)
204 Ill. App.3d 277
149 Ill.Dec. 573
In re B.T., et al., minors (The People of the State of Illinois, Petitioner-Appellee,
v.
Tony Thornton and Quintella Fleming, Respondents-Appellees (B.T. et al., Minors, Appellants)).
Nos. 1-89-0998 to 1-89-1000.
Appellate Court of Illinois, First District, Fourth Division.
September 28, 1990.
*1270 Patrick T. Murphy, Office of Public Guardian, Chicago, for appellants.
Cecil A. Partee, State's Atty., Cook County, Chicago, for petitioner-appellee.
Randolph N. Stone, Public Defender, Cook County, Chicago, for respondents-appellees.
Presiding Justice McMORROW delivered the opinion of the court:
Petitions for the adjudication of wardship were filed in the circuit court alleging in pertinent part that respondent-mother (hereinafter respondent) had neglected her minor children, B.T., A.T., and T.T., in that the respondent had failed to provide the care necessary for the minors' well-being and had provided the minors an environment injurious to their welfare. (Ill.Rev. Stat.1987, ch. 37, par. 802-3.) After an adjudicatory hearing, the court found that the State had failed to establish that the respondent had neglected the minors. Based upon this finding, the trial court dismissed the wardship petitions and vacated the order which had placed the minors in the temporary custody of the Department of Children and Family Services (DCFS). Through their guardian ad litem, the minors appeal from the trial court's ruling, and argue that the court's decision was against the manifest weight of the evidence. We conclude that the State's evidence proved respondent had neglected the minors by failing to provide the care necessary for their well-being. As a result, we reverse and remand.
The record shows that the minors were respectively 5 years, 2 years, and 8 months of age, when the wardship petitions were filed. The minors were placed in the temporary custody of the DCFS, and a guardian ad litem was appointed to represent them. At the trial court's adjudicatory hearing on the wardship petitions, the respondent appeared and was represented by appointed counsel. Respondent-father did not appear, and a default judgment was entered against him.
*1271 Clara Bualice, the maternal grandmother of the minors, testified on behalf of the State. She stated that she received a telephone call at approximately 6:15 p.m. on November 4, 1988, that caused her to go to her cousins' apartment. At the apartment, Ms. Bualice found that her cousins, then 17 and 10 years of age, were caring for the minors. When Ms. Bualice asked B.T. the whereabouts of his mother, he told her that he did not know. Ms. Bualice then took her grandchildren home with her. Respondent contacted Ms. Bualice two days later when she arrived at Ms. Bualice's home early in the morning as Ms. Bualice was preparing for work. When Ms. Bualice asked where she had been, respondent told her that she needed some air.
Ms. Bualice testified that she had cared for the minors many times in the past. She specifically recalled instances when respondent abruptly left their shared household in the middle of the night without saying where she was going and stayed away for period of three days to three weeks at a time. During these absences, respondent made no prior arrangements with Ms. Bualice to care for the children. In addition, respondent did not telephone during her absences, and Ms. Bualice had no way of contacting respondent when she was gone. Ms. Bualice believed that her daughter had a drinking problem, and had seen her intoxicated several times a week when they were living together. With the exception of food stamps which respondent shared with Ms. Bualice, respondent failed to provide any additional financial support for her children.
During cross-examination, Ms. Bualice acknowledged that she voluntarily participated in the care of the children when she shared the same household with respondent. Ms. Bualice further stated that she did not anticipate or expect her daughter to leave the children with her without prior notice or agreement. Ms. Bualice acknowledged that her cousin also has children.
At the close of the State's evidence, the court granted respondent's motion for a directed finding on the allegation of neglect based on injurious environment. However, the trial court denied the respondent's motion for a directed finding with respect to the State's allegation of neglect based on lack of necessary care.
Respondent testified on her own behalf. Although she admitted that she had not pre-arranged with her mother to care for her children during her absences, she observed that her mother did care for them while she was away. Respondent also stated that she gave her mother food stamps for groceries when they were living together, and that she stayed home and cared for her children while her mother went to work.
Respondent testified that when the petitions were filed in November 1988, she was no longer living with her mother, but had an apartment near her cousin. Respondent stated that she was providing food, shelter and care for the children through public aid. She further stated that her cousin has two children, and that she and her cousin had arranged to care for each other's children several times a month. During cross-examination she again admitted that she had no prior agreement whereby her mother would care for her children during her absences. However, respondent stated that her mother never objected when respondent left the children with her, and respondent thought it was all right for her to do so.
At the close of evidence and argument, the court observed that it was a "somewhat difficult case" and a "somewhat marginal case." The court noted the evidence was uncontradicted that the children had been well cared for in the absence of either respondent or Ms. Bualice. The court also observed that respondent had been "extremely inconsiderate" in leaving at night without informing the grandmother, and in staying away for long periods of time without contacting them. Regarding the November 4th incident, the court determined that the evidence was insufficient to prove neglect. The court reasoned that although respondent had demonstrated irresponsible behavior, she had left the minors with a cousin. Based upon these findings, the trial court dismissed the petitions for adjudication *1272 of wardship and vacated the temporary custody order. In this appeal, the minors, through their guardian ad litem, contest the propriety of the court's decision and request that it be reversed.
The Juvenile Court Act (the Act) provides in pertinent part that a neglected minor includes a person under 18 years of age "whose parent * * * does not provide the proper or necessary support * * * or other care necessary for his or her well-being * * * or who is abandoned by his or her parents * * *." (Ill.Rev.Stat.1987, ch. 37, par. 802-3(1)(a).) In general, "neglect" is considered to be the failure to exercise the care that circumstances justly demand, and encompasses both willful and unintentional disregard of parental duty. (People ex rel. Wallace v. Labrenz (1952), 411 Ill. 618, 104 N.E.2d 769.) The term is not one of fixed and measured meaning, and takes its content from the specific circumstances of each case. (In re Stilley (1977), 66 Ill.2d 515, 6 Ill.Dec. 873, 363 N.E.2d 820.) Proceedings for adjudication of wardship, like all proceedings under the Act, are brought only in the best interests of the children involved (People v. McDonald (1989), 189 Ill.App.3d 374, 137 Ill.Dec. 166, 545 N.E.2d 819), and are, in effect, sui generis. (In re Brooks (1978), 63 Ill.App.3d 328, 20 Ill.Dec. 39, 379 N.E.2d 872.) The State has the burden of proving the neglect alleged in a wardship petition by a preponderance of the evidence (In re Aaronson (1978), 65 Ill.App.3d 729, 22 Ill.Dec. 463, 382 N.E.2d 853), and the trial court determines whether the State has satisfied that burden. (In re B.K. (1984), 121 Ill.App.3d 662, 77 Ill. Dec. 184, 460 N.E.2d 43.) The trial court's determination will be disturbed on appeal if the court's decision is against the manifest weight of the evidence. In re Stilley (1977), 66 Ill.2d 515, 6 Ill.Dec. 873, 363 N.E.2d 820.
Based upon our review of the record, we conclude that the State's evidence was sufficient to prove that respondent neglected her minor children by failing to provide the proper support and care necessary for their well-being. The testimony of Ms. Bualice revealed numerous instances of irresponsible conduct by respondent in abruptly leaving the household without providing for the care of the minors. The evidence showed that respondent was absent for days or weeks at a time, and did not contact the children or make her whereabouts known to them or her mother. The record also reflects that respondent made no arrangements with Ms. Bualice to care for the minors during respondent's absences, and provided little financial support to the children. The testimony further indicated that respondent repeated her prior irresponsible behavior in November 1988, when respondent's mother cared for the children for two additional days while respondent absented herself to get "some air." In our view, this evidence was sufficient to prove the State's allegation that respondent neglected the minors by failing to provide the care and support necessary for their welfare.
The trial court's oral pronouncements indicate that the court found significant the fact that no physical harm had befallen the children during respondent's absences. However, we do not believe that the fortuitous lack of physical injury to the minors serves to negate the evidence of neglect apparent in respondent's dereliction of duty to her children. Neglect based on lack of necessary care was proven, although the physical needs of the children were being met by others, in the cases of In re Stilley (1977), 66 Ill.2d 515, 6 Ill.Dec. 873, 363 N.E.2d 820, and In re Ritchie (1978), 58 Ill.App.3d 1045, 16 Ill.Dec. 414, 374 N.E.2d 1292. These cases were decided before the 1982 amendment to the Act, and the language of the present statute seems to incorporate the reasoning expressed in Stilley and Ritchie insofar as it focuses on parental neglect in providing the care necessary for the minor's well-being. The trial court's reasoning in the instant cause appears to be more consistent with that expressed in In re Gates (1978), 57 Ill. App.3d 844, 15 Ill.Dec. 222, 373 N.E.2d 568, which was decided before the enactment of the present statute, and in our judgment does not comport with the present codification.
*1273 The cases cited by respondent on appeal do not conflict with our conclusion. In re Menconi (1983), 117 Ill.App.3d 394, 73 Ill. Dec. 10, 453 N.E.2d 835, is inapposite to the instant cause, as the sole question presented in Menconi was whether grandparents had standing to file a custody petition under the Illinois Marriage and Dissolution of Marriage Act. (Ill.Rev.Stat.1981, ch. 40, par. 601(b)(2).) In re Harpman (1985), 134 Ill.App.3d 393, 89 Ill.Dec. 391, 480 N.E.2d 873 and In re Nyce (1971), 131 Ill.App.2d 481, 268 N.E.2d 233, are distinguishable on their facts. (See In re A.D.R. (1989), 186 Ill.App.3d 386, 134 Ill.Dec. 308, 542 N.E.2d 487.) In re Brooks (1978), 63 Ill.App.3d 328, 20 Ill.Dec. 39, 379 N.E.2d 872 involved neglect petitions based on allegations of injurious environment, which is not at issue here.
For these reasons, the judgments of the circuit court are reversed, and the causes remanded for further proceedings consistent herewith.
REVERSED AND REMANDED.
JOHNSON and LINN, JJ., concur.