631 N.E.2d 341 (1994)
258 Ill. App.3d 669
197 Ill.Dec. 338
IN THE INTEREST OF D.M., a minor (The People of the State of Illinois, Petitioner-Appellee, Denise M., Respondent-Appellant).
No. 1-89-1713.
Appellate Court of Illinois, First District, First Division.
March 14, 1994.
*342 Julie L. Friedman, Chicago (Julie L. Friedman, of counsel), for respondent-appellant.
Office of the Cook County Public Guardian, Chicago (Patrick T. Murphy, Leslie Robbins, Kathleen G. Kennedy, of counsel), for minor appellee.
Justice O'CONNOR delivered the opinion of the court:
Respondent, Denise M., appeals from an order of the circuit court, in which the court found that her daughter, Donna, was an abused minor whose environment was injurious to her welfare.
We affirm.
On October 1, 1987, petitioner, the Illinois Department of Children and Family Services (DCFS), filed a petition for adjudication of wardship. The petition alleged that Donna was abused in that her parent committed or allowed a sex offense to be committed against Donna in violation of "section 702-4 2(A)iii" of the Juvenile Court Act then in effect. The petition also alleged abuse resulting from living in an environment injurious to her welfare.
At the adjudicatory hearing (Ill.Rev.Stat. 1985, ch. 37, pars. 704-2, 704-6, 704-8), each party presented evidence by stipulation. If called to testify, Lida Hunt would have sworn that she is a school teacher at Jane Adams School in Melrose Park. On September 29, 1987, Donna, who had been taking a make-up test in Hunt's presence, began to cry. Hunt took Donna aside, and Donna told her that her "Uncle Tony kept me in bed all weekend." Donna informed Hunt that her mother and maternal grandmother were in the home and that they had told "him to leave me alone and he doesn't leave me alone." When Hunt asked Donna what her uncle did to her, Donna replied that "he put his thing he goes to the bathroom with where I go to the bathroom." Hunt then referred Donna to the school's social worker.
The State then presented the stipulated testimony of Mary Beth Reblar, the certified social worker to whom Donna was assigned. Donna told Reblar that "Tony had sex with me. Tony who lives with me, my uncle." Donna described to Reblar fondling, vaginal intercourse, and kissing. When Reblar asked Donna if she had told anyone, Donna replied that "people at home knew." Donna also told her that the abuse had been going on during the summer of 1987. Donna was afraid to go home because the incidents were occurring more frequently and because Tony had threatened to cut off her doll's head. Donna also expressed fears that no one would believe her.
Michael Britt's stipulation was presented next. Britt, an investigator with the DCFS, received a report from the school, where he interviewed Donna later that day. Donna told him that Tony would "put his hand in his pants and then put his hand between her legs." When Tony put his hand between her legs, it "felt like grease." Donna also told Britt that her grandmother had told her to say that another child, also named Tony, had touched her. After the interview, Britt took protective custody of Donna and admitted her into Mount Sinai Hospital for evaluation.
Dr. Anthony Decker testified by stipulation as well. He was the pediatrician on call at Mount Sinai when Donna arrived on September 29, 1987. He gave her a pelvic examination at that time and found that her hymen was open to one and five tenths centimeters; the hymen of the average girl Donna's age would be open to only six tenths of a centimeter or less. Dr. Decker also found Donna's vagina to be "gaping," which indicated repetitive penetration. Dr. Decker found no rectal lesions; however, he did find loose rectal tone consistent with penetration. Dr. Decker's principal diagnosis was sexual abuse. Donna's medical records from her stay at Mount Sinai were admitted into evidence.
Denise presented four witnesses. First, Josephine M., Donna's grandmother, testified by stipulation. Josephine lived with Donna, along with Donna's grandfather, Denise, and Tony, the alleged perpetrator. Josephine stated that the family participated in many *343 activities together, but that Donna and Tony were never alone together. Donna shared a bed with her grandmother, and Tony had his own bedroom. Tony had never been violent toward any family member, including Donna. Finally, Donna never complained to her grandmother that Tony, or anyone else, had sexually abused her.
Donna's grandfather, Anthony Sr., stated that his son, Tony, was not a violent person and that he treated Donna with care and love. Donna never reported to her grandfather that she had been sexually abused by Tony or anyone else.
Denise stated that Donna was treated well by the whole family and that she had never witnessed any maltreatment of Donna by Tony. Nor did Donna report any such behavior to her.
Tony, the alleged perpetrator, had been doing volunteer work at Westlake Hospital for seven years prior to the hearing. He stated that he had never had any sexual contact with Donna.
The trial judge found by a preponderance of the evidence that Donna had been sexually abused and that her home environment was injurious to her welfare. At a dispositional hearing (Ill.Rev.Stat.1985, ch. 37, par. 705-1) held later, the trial judge entered an order making Donna a ward of the court.
Denise first argues that the circuit court's finding of abuse was against the manifest weight of the evidence. Specifically, she maintains that the evidence did not prove that she knew of the sexual activity allegedly taking place in the home.
The petition for adjudication of wardship which was filed in this case mirrored the content of the statute upon which it was based: that Donna's "parent or immediate family member, or any person responsible for the minor's welfare, or any person who is in the same family or household as the minor" (Ill.Rev.Stat.1987, ch. 37, par. 802-3(2)(a)(iii)), commits or allows to be committed any sex offense against Donna." Therefore, the State did not have to prove Denise's knowledge or allowance of the abuse, but rather the complicity or knowledge or allowance of any member of the household.
An adjudication of wardship is brought only in the best interests of the child. (People v. McDonald (1989), 189 Ill. App.3d 374, 137 Ill.Dec. 166, 545 N.E.2d 819, appeal denied (1990), 129 Ill.2d 569, 140 Ill. Dec. 677, 550 N.E.2d 562.) The State must prove its allegations of abuse and injurious environment by a preponderance of the evidence. (In re B.T. (1990), 204 Ill.App.3d 277, 149 Ill.Dec. 573, 561 N.E.2d 1269, appeal denied, 135 Ill.2d 556, 151 Ill.Dec. 380, 564 N.E.2d 835.) A trial court's finding of abuse is entitled to great deference on appeal and will be disturbed only if it is found to be against the manifest weight of the evidence. In re Stilley (1977), 66 Ill.2d 515, 6 Ill.Dec. 873, 363 N.E.2d 820.
In this case, the evidence presented is sufficient to satisfy the standard of review set forth above. All the State's witnesses stated that Donna had told them that people at home "knew" about the sexual abuse being committed against her by her uncle. Moreover, Donna's statements regarding the sexual conduct were corroborated by the medical evidence which contained her examining physician's diagnosis and findings. This diagnosis contained a finding of repetitive penetration. Thus, it appears that Denise and the rest of the family were incapable of protecting Donna from the abuse. For that reason, the trial court's adjudication of wardship based on its findings of abuse and of an injurious family environment was justified. The safety of the minor was of paramount importance, and her removal from the home was necessary, even if her mother was not directly responsible for the abuse. See In re Marcus E. (1989), 183 Ill.App.3d 693, 132 Ill.Dec. 34, 539 N.E.2d 344.
Denise next argues that she received ineffective assistance of counsel because her attorney agreed to a stipulated bench trial. In this instance, she maintains, such a decision was unreasonable and prejudicial because the outcome was dependent upon the credibility of the witnesses.
In proceedings such as here, the Juvenile Court Act provides that the minor and the parents have the right to be represented by counsel. (Ill.Rev.Stat.1985, ch. 37, par. 701-20.) *344 Moreover, if a party is indigent, the public defender will be appointed. (Ill.Rev. Stat.1985, ch. 37, par. 701-20.) Our supreme court has stressed that this right is not of constitutional origin. (People v. Lackey (1980), 79 Ill.2d 466, 468, 39 Ill.Dec. 769, 405 N.E.2d 748.) Nonetheless, in addressing whether a public defender appointed under the Juvenile Court Act labored under a conflict of interest, the court applied the constitutionally grounded guidelines enunciated in criminal cases. (People v. Lackey, 79 Ill.2d at 468, 39 Ill.Dec. 769, 405 N.E.2d 748.) The court's action in Lackey suggests that guidelines arising from the constitutional right to counsel be applied to any right to counsel granted in the Juvenile Court Act.
In the wake of Lackey, this court has recognized that inherent in the Juvenile Court Act's right to counsel is the right that such counsel be effective. (In re M.D.B. (1984), 121 Ill.App.3d 77, 76 Ill.Dec. 580, 458 N.E.2d 1380; In re Johnson (1981), 102 Ill. App.3d 1005, 58 Ill.Dec. 31, 429 N.E.2d 1364.) Indeed, as the second district has noted, "[i]t would seem a useless gesture on the one hand to recognize the importance of counsel in proceedings to terminate parental rights as evidenced by our statutory right for sameand, on the other hand, not require that counsel perform effectively." (In re R.G. (1988), 165 Ill.App.3d 112, 127, 116 Ill. Dec. 69, 518 N.E.2d 691, appeal denied, 119 Ill.2d 557, 119 Ill.Dec. 397, 522 N.E.2d 1256.)[1] The court then went on to apply the standard utilized in criminal cases to assess a parent's claim of the ineffectiveness of counsel appointed under the Juvenile Court Act. In re R.G., 165 Ill.App.3d at 128, 116 Ill.Dec. 69, 518 N.E.2d 691.
At least three courts have warned of the "inadvisibility of mechanically applying criminal law standards to a civil juvenile proceeding where the resolution turns not on guilt or innocence, but on the best interest of the child." (In re Parental Rights of James W.H. (N.M.App.1993), 115 N.M. 256, 849 P.2d 1079, 1082, appeal denied (N.M.1993), 115 N.M. 545, 854 P.2d 872. See also State ex rel. Juvenile Department v. Geist (1990), 310 Or. 176, 796 P.2d 1193; In re Adoption of T.M.F. (1990), 392 Pa.Super. 598, 573 A.2d 1035, appeal denied (Pa.1990), 527 Pa. 634, 592 A.2d 1301.) In those jurisdictions, the relevant inquiry is whether the proceeding was "fundamentally fair" and whether counsel exercised professional skill and judgment. (See Geist, 796 P.2d at 1201-03.) However, a majority of jurisdictions which have legislated juvenile act provisions similar to the one at issue here, are in accord with the second district's decision in In Re R.G. (See In re V.M.R. (Colo.Ct.App.1989), 768 P.2d 1268, 1270; In re Erin G. (1988), 139 A.D.2d 737, 527 N.Y.S.2d 488; In re Trowbridge (1986), 155 Mich.App. 785, 401 N.W.2d 65; In re Rushing (1984), 9 Kan.App.2d 541, 684 P.2d 445; State v. Anonymous (1979), 179 Conn. 155, 425 A.2d 939.) Thus, in accordance with In re R.G., we will apply the criminal standard to assess Denise's claim.
Generally, in order to establish ineffective assistance of counsel, one must show both that counsel's representation fell below an objective standard of reasonableness and that a reasonable probability exists that, but for the error, the result would be different. (Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.) In adopting Strickland, our supreme court recognized that the party alleging ineffective assistance of counsel bears a heavy burden to overcome the strong presumption in favor of a finding that counsel's advocacy was not ineffective. (People v. Albanese (1984), 104 Ill.2d 504, 85 Ill.Dec. 441, 473 N.E.2d 1246, cert. denied (1985), 471 U.S. 1044, 105 S.Ct. 2061, 85 L.Ed.2d 335.) Further, the determination of the reasonableness of trial counsel's actions must be evaluated from counsel's perspective at the time of the alleged error, without hindsight, in light of the totality of the circumstances. Strickland v. Washington, 466 U.S. at 668, 104 S.Ct. at 2052, 80 L.Ed.2d at 674.
Denise argues that counsel was ineffective because he did not "present" a case. The record, however, belies this. Although counsel used stipulations to present Denise's *345 case, counsel took an active part in the arguments made before the court, challenging the credibility of the State's witnesses. Accordingly, we cannot say that counsel failed to present a case. Moreover, the use of stipulations, in and of itself, does not establish ineffective assistance of counsel. The decision to use such testimony was obviously counsel's trial strategy, which is generally unassailable under Strickland. In each instance, the family members' stipulations contained denials of the charges and of the knowledge of any sexual abuse. Denise's argument confuses a stipulation with an admission. A stipulation as to the testimony of a witness is not conclusive proof of a factual matter in dispute. (People v. Lewis (1984), 103 Ill.2d 111, 82 Ill.Dec. 442, 468 N.E.2d 1222, cert. denied (1985), 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 384.) Thus, the trier of fact may consider the stipulated testimony of a witness along with other evidence in resolving a factual dispute. (People v. Sclafani (1988), 166 Ill.App.3d 605, 117 Ill.Dec. 248, 520 N.E.2d 409, appeal denied (1988), 121 Ill.2d 582, 122 Ill.Dec. 444, 526 N.E.2d 837.) Here, the trial judge was free to consider the stipulations of both sides, in addition to the medical evidence. Apparently, he believed the stipulated testimony presented by the State and discounted that presented by Denise.
Even if we were to assume that counsel's decision to stipulate to the testimony was unreasonable, Denise still falls short of proving that the result of the hearing would have been different. Denise argues that the case turned on witness credibility because no other evidence was presented. However, this argument ignores the medical records which were admitted into evidence. Those records tended to corroborate the State's witnesses. Moreover, although Denise's counsel noted several areas in the medical records where Donna's statements appeared to be contradictory, these inconsistencies were resolved in favor of the State. (See In re S.M. (1988), 171 Ill.App.3d 361, 121 Ill.Dec. 507, 525 N.E.2d 565 (internal inconsistencies alone cannot be used to overturn trier of fact's credibility determinations).) In view of this, it is difficult to say that the outcome would have been different had counsel used "live" testimony. Based on these considerations, Denise has failed to meet her burden in establishing the ineffectiveness of her counsel.
The judgment of the circuit court, therefore, is affirmed.
Affirmed.
CAMPBELL, P.J., and MANNING, J., concur.
NOTES
[1] We note that the Juvenile Court Act's right to counsel attaches for any proceeding commenced under the Act, not just parental termination proceedings.