# Illinois Official Reports

## Appellate Court

---

### *In re Star R.*, 2014 IL App (1st) 140920

---

| | |
|---|---|
| Appellate Court Caption | *In re* STAR R., a Minor, Respondent-Appellee (The People of the State of Illinois, Petitioner-Appellee, v. Donald S., Respondent-Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-14-0920 |
| Filed | September 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the nine-year-old respondent was removed from her mother's home based on findings that she was abused and neglected there, the trial court's order placing her in the custody of a Department of Children and Family Services guardianship administrator rather than the home of the man who was recently determined to be her natural father was affirmed, notwithstanding that man's contention that the State failed to prove by a preponderance of the evidence that he was unable to care for his child, since the State is not required to find a natural parent unfit to care for a child if the best interest standard can be attained only by placing a child in the custody of someone other than a natural parent, and in the instant case, even though the State did not establish by a preponderance of the evidence that the man was unfit or unable to care for, protect and train his child, the decision to place her with the guardianship administrator was not against the manifest weight of the evidence, and the trial court properly concluded that the current placement was in the child's best interest until such time as her father could be assessed, screened, and properly united with her. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-JA-517; the Hon. Maxwell Griffin, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Law Office of Stephen Jaffe, of Chicago (Stephen Jaffe, of counsel), for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Nancy Kisicki, Assistant State's Attorneys, of counsel), for the People.

Robert F. Harris, Public Guardian, of Chicago (Kass A. Plain and Janet L. Barnes, of counsel), guardian *ad litem*.

Panel

JUSTICE LIU delivered the judgment of the court, with opinion.
Justices Harris and Pierce concurred in the judgment and opinion.

**OPINION**

¶ 1    Respondent, Donald S. (hereinafter, respondent), is the biological father of the minor Star R. He appeals from an order of the circuit court of Cook County placing Star R. in the custody of a Department of Children and Family Services (DCFS) guardianship administrator, based on findings that he is unable to care for Star R. and that it is in the best interest of the minor to remove her from his custody. Respondent contends that the State failed to prove by a preponderance of the evidence that he was unable to care for Star R. For the following reasons, we affirm.

¶ 2                                 BACKGROUND

¶ 3    On June 4, 2013, the State filed a petition for adjudication of wardship, alleging that Star R. was an abused and neglected minor. The State alleged that on or about May 31, 2013, Star R.'s sibling was injured when his mother's paramour and a family member were involved in a physical altercation. According to the petition, Star R.'s sibling sustained lacerations to his face and was covered with powdered glass. Star R.'s mother, however, could not accompany him to the hospital "because she had been drinking and was intoxicated." The State alleged that Star R.'s "[m]other and her paramour, who resides in the home, have an ongoing issue of domestic violence with each other while [Star R.] and [her] siblings are present." The State alleged that Star R.'s mother was also in the process of being evicted and had failed to locate alternate housing. The State listed an individual named Donald R. as Star R.'s putative father. It acknowledged in the petition, however, that paternity had yet to be established.

¶ 4    A temporary custody hearing was held on June 4, 2013. Following the hearing, the court found probable cause that Star R. was abused and neglected. The court placed Star R. in the temporary custody of a DCFS guardianship administrator, having found that there was an immediate and urgent need to remove Star R. from the home.

¶ 5    On October 9, 2013, the court ordered paternity testing of the putative father, Donald R. Thereafter, on October 23, 2013, the court entered a finding that Donald R. was not the father of Star R. based on the results of a DNA test.

¶ 6    On January 23, 2014, the court, after a hearing, adjudicated Star R. abused and neglected pursuant to subsections 2-3(1)(b) (injurious environment) and 2-3(2)(ii) (substantial risk/physical injury) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2012)). The court's findings mirrored the State's allegations in the petition for adjudication of wardship. Further, the court found that the abuse and neglect was inflicted specifically by Star R.'s mother.

¶ 7    That same day, the court ordered respondent to submit to DNA testing for the purpose of establishing his paternity. Respondent was subsequently tested and confirmed to be Star R.'s father. On February 21, 2014, the court entered a formal finding of paternity. Respondent then moved the court to vacate the DCFS Guardian Administrator's temporary custody and to place Star R. in his custody; the court, however, denied the motion.

¶ 8    A dispositional hearing was held on March 19, 2014. At the hearing, Lyneir Cole testified that he is employed by Seguin Services and is the caseworker assigned to Star R.'s case. Cole testified that Star R. and three of her siblings were placed in a nonrelative foster home on September 6, 2013, the day he was assigned the case. He testified that the foster home is a two-parent household and that the foster father is home all day with the minors while the foster mother works. Cole last visited the foster home on March 13, 2014. He found everything safe and appropriate and no signs of abuse or neglect.

¶ 9    Cole testified that nine-year-old Star R. is currently in third grade and is a special education student due to an emotional disability. He testified that Star R.'s foster parents report that she is forgetful, is disruptive in class, and has difficulty completing her homework. Cole testified that Star R. needs a psychological examination so that she can receive appropriate treatment, but that he is still waiting on approval from DCFS. He testified that Star R. has also been referred for counseling, but that she has not received any treatment because "Seguin is backed up at the moment." Cole testified that Star R. needs counseling to address "possible cognitive delays" and the recent discovery that respondent is her father (she previously thought than an individual named Sammy T. was her father). He testified that Star R.'s medical, dental, and vision are all up to date.

¶ 10    Sheila H., the mother of Star R., has been assessed for services and found to be in need of alcohol and drug treatment. She has resided at Lutheran Social Services, a drug treatment facility, since July 2013. Cole testified that she is "doing very well." He noted that she has complied with attending all group sessions and mandatory meetings, that all of her Breathalyzer tests and random urine drops have been negative, and that she has recently become the house manager of the facility. Sheila H. has been referred for domestic violence treatment in addition to her alcohol and drug treatment. Cole testified that Sheila H. has expressed her willingness to participate in such treatment; however, he has not yet obtained approval for her to begin.

¶ 11    Sheila H. and Sammy T. are in a relationship and plan to live with each other when Sheila H. is discharged from treatment. Cole testified that they currently visit with Star R. and her siblings once a week. He testified that Sheila H. is "very attentive" to the children and appropriately interacts with them. He noted that she gives them individual time and plays games with them on a cell phone, and that the children sit and talk with her and discuss school.

Cole believes that "there is a bond there" and testified that all of the visits have been safe and appropriate.

¶ 12    Cole testified that he has visited the home where respondent lives with two of his children and found the home to be "appropriate" and "neat." He testified that, when he was there, respondent was preparing the children for their day and also preparing to do chores. Cole has not assessed respondent for service in light of his appropriate behavior with his two children. He testified that respondent denies using alcohol or drugs and that he has "no reason not to believe him." He subsequently testified, however, that one of his colleagues once informed him that she smelled alcohol and marijuana on respondent. Cole recommended a Juvenile Court Assessment Project (JCAP) assessment and a random urine screen, noting that respondent had stated he was "willing to drop."

¶ 13    Respondent has visited with Star R. on two separate occasions. Cole testified that he was present at the first visit and found it to be appropriate. He testified that respondent's two children were there and that they interacted with Star R., her siblings, Sheila H., and Sammy T. He informed Star R. that respondent was her father, and she reacted with "a blank stare on her face." Cole explained to Star R. that there would be an opportunity to visit with respondent and to get to know her siblings, and he also arranged for future weekly visits. Respondent visited the next Saturday; however, the foster parents cancelled the following Saturday because they forgot about a vision appointment, and respondent cancelled the week after that "because he didn't have the gas to get to the visit."

¶ 14    Cole was asked whether Star R. was willing to visit with respondent at this point, and he responded:

> "I haven't talked to her about it since. I probably need it [*sic*] sit down and speak with her again to see what her thoughts are because initially when I pulled her away from everyone else and spoke with her about [respondent] being her father she had–she said she knew who he was but she didn't know he was her father. And then I asked her about the two siblings and she knew who Diamond was, she didn't know who Donald was."

He testified that he has not allowed for supervised visits in respondent's home because "when a child tells me that they're unsure who that person is, I don't know that that is appropriate to force her to go into an environment that she may not want to be in." Cole testified that "once they've done more visits and gotten to know each other better, *** it may become appropriate." He believes that "there needs to be a form of intervention" to help Star R. and respondent develop their relationship. He stated that he could follow up on parent/child interactive therapy for them.

¶ 15    Cole testified that his agency was recommending that Star R. become a ward of the court so that respondent could have the opportunity to work on enhancing his life and becoming a part of Star R.'s life. He testified that if the court made Star R. a ward of the court, his agency would recommend a goal of "return home in twelve months."

¶ 16    Respondent testified, on his own behalf, that he lives in Chicago with his two children, Donald and Diamond. He testified that Donald is 13 years old and has been living with him since he was about 12 months old, and that Diamond is 15 years old and has been living with him since she was 2 years old. Respondent is willing and able to take custody of Star R.; however, he acknowledged that he had not seen Star R. between the time she was born and about two weeks prior to the hearing. Respondent denied that he drinks or uses drugs.

¶ 17    At the close of evidence, the State asked the court to find respondent unable to care for Star R. Counsel for respondent, however, argued that there was no "factual basis for this Court to make a finding that [respondent] is anything other than fit, willing and able, at this point." Counsel noted that respondent had a safe and appropriate home and had successfully raised two teenagers for "practically their entire lives." While he acknowledged that respondent had no relationship with Star R., he argued that children were put into strangers' foster homes every day and reminded the court that respondent was "willing to drop" and "willing to do the assessments." He further pointed out that there was no reason why parent interactive theory could not be put into place while Star R. was in respondent's custody.

¶ 18    The court, after hearing argument, expressed concern that hardly anything "was referred or done on this case other than the mother going and being successful in substance-abuse treatment." It noted:

> "[T]hey're now arguing that [respondent], who didn't come forward until January of this year, is fit, willing and able and I have no evidence or testimony that he was appropriately assessed.
>
> So I don't have a clue what he can and can't do. Other than [counsel's] argument that he apparently has a thirteen and a fifteen year-old in his care."

The court was noticeably troubled, stating, "I have to make an informed decision and I don't believe enough has been done on this case to allow me to do that at this point in time."

¶ 19    In the end, the court chose to adjudge Star R. a ward of the court "at this point in time" because it believed it was in her "best interest and welfare." The court made a finding that respondent and Sheila H. were "unable for some reason other than financial circumstances alone to care for, protect, train, or discipline" Star R. It noted, however, "I cannot make a finding that appropriate services aimed at family, preservation of family unification, have been either successful or unsuccessful at this time because I don't know if appropriate services have been put in place." Accordingly, it deferred that finding. The court vacated the previous temporary custody order and entered a dispositional order placing Star R. in the custody of a DCFS guardianship administrator with the right to place the minor. It then set a family conference and permanency planning hearing for May 15, 2014, noting, "[N]ow that everybody knows what it is that I want, I'm sure we'll be able to do a lot of things when we come back that I'm simply just not comfortable doing right now."

¶ 20    Respondent filed a timely notice of appeal from the circuit court's dispositional order. We thus have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994), 303 (eff. May 30, 2008), and 660(b) (eff. Oct. 1, 2001). *In re Brandon S.*, 331 Ill. App. 3d 757, 760 (2002) ("A disposition order from the juvenile court is generally considered final and appealable.").

¶ 21                                                    ANALYSIS

¶ 22    In this appeal, respondent does not challenge the circuit court's findings of abuse and neglect or its determination that it is in Star R.'s best interests that she be made a ward of the court. Rather, he solely challenges the court's dispositional order, which placed Star R. in the custody of a DCFS guardianship administrator.

¶ 23    The Act requires a dispositional hearing to be held when a court finds a minor to be abused or neglected. 705 ILCS 405/2-21(2) (West 2012). "At the dispositional hearing, the court shall

determine whether it is in the best interests of the minor and the public that [s]he be made a ward of the court." 705 ILCS 405/2-22(1) (West 2012). If the court determines that it is in the minor's best interests that she be made a ward of the court, "the court shall [also] determine the proper disposition best serving the health, safety and interests of the minor and the public." 705 ILCS 405/2-22(1) (West 2012). Various kinds of dispositional orders are authorized with respect to wards of the court. 705 ILCS 405/2-23(1) (West 2012). Here, the court placed Star R. in accordance with section 2-27 of the Act, which provides:

> "If the court determines and puts in writing the factual basis supporting the determination of whether the parents, guardian, or legal custodian of a minor adjudged a ward of the court are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so, and that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of his or her parents ***, the court may at this hearing and at any later point:
>
> * * *
>
> (d) commit the minor to the Department of Children and Family Services for care and service ***." 705 ILCS 405/2-27(1)(d) (West 2012).

See 705 ILCS 405/2-23(1)(a)(2) (West 2012) (authorizing placement in accordance with section 2-27).

¶ 24    Respondent initially complains that the court failed to put into writing the factual basis for its finding that he is unable to care for Star R. He claims that "[b]ecause there is no factual basis to find [that he] is unable to care for Star, the court's finding that [he] is unable to do so is against the manifest weight of the evidence."

¶ 25    The State and the public guardian argue that respondent has forfeited this argument by failing to raise it in the circuit court. In his reply brief, respondent clarifies that he is not challenging the lack of a written factual basis but, rather, the lack of any factual basis for the court's finding that he is unable, unwilling, or unfit to care for Star R.

¶ 26    In *In re Christopher S.*, 364 Ill. App. 3d 76, 89 (2006), a guardian *ad litem* similarly argued that the circuit court had failed to provide a sufficient factual basis for its disposition order. This court found the issue waived because the guardian *ad litem* failed to object at trial and did not include the issue in its posttrial motion. *Id.* We additionally noted that "[o]ur supreme court has held that explicit oral findings on the record may satisfy the statutory requirement if they inform the parties of the basis for the court's decision." *Id.* at 90 (citing *In re Madison H.*, 215 Ill. 2d 364, 376-77 (2005)).

¶ 27    We agree that respondent has forfeited any argument regarding the sufficiency of the court's factual basis for its finding where he failed to object at trial and raise the issue in a posttrial motion. We also find that the court's oral findings sufficiently informed the parties of the basis for the court's decision. The circuit court explained, on the record, why it was adjudicating Star R. a ward of the court and placing her in the custody of a DCFS guardianship administrator. In short, the court found that there had not been enough progress in the case with individual assessments and treatment referrals and that it was in Star R.'s best interests to remain in DCFS custody until these issues were resolved. Given that the record is sufficient to undertake a review of the court's dispositional order, we turn to respondent's primary argument.

¶ 28 Respondent claims on appeal that the State failed to prove by a preponderance of the evidence that he is unable to care for Star R. He argues that the evidence showed that he was able to care for his two children, Donald and Diamond; that his home was safe and appropriate; that he was not in need of services; that he does not use drugs or alcohol; and that he appropriately interacts with Star R. Further, he argues that "[t]here is no authority for the proposition that somehow the minor's 'best interests' allow the court to make a finding that a parent is unable to care [*sic*] his when there is no factual basis to make an 'unable' finding."

¶ 29 Under the Act, "to deprive a parent of custodial rights to children who have been adjudged wards of the court, a court must find that the parent is unfit or unable to care for, protect, train or discipline the children or is unwilling to do so." *In re J.J.*, 327 Ill. App. 3d 70, 77 (2001) (citing 705 ILCS 405/2-27 (West 1998)). However, "the juvenile court's primary concern is the best interests of the child, and to that end, the court is vested with wide discretion." *Id.* (citing *In re Stilley*, 66 Ill. 2d 515, 520 (1977)). "[A] child's best interest is superior to all other factors, including the interests of the biological parents." *Id.* "If the best interests standard can be attained only by placing the child in the custody of someone other than the natural parent, *it is unnecessary for the court to find the natural parent unfit to care for the child*." (Emphasis added.) (Internal quotation marks omitted.) *Id.*

¶ 30 The standard of proof at the dispositional hearing is a preponderance of the evidence. *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998). We will not disturb the circuit court's determination in a child custody case unless the court exceeded its broad discretion or its determination is against the manifest weight of the evidence. *J.J.*, 327 Ill. App. 3d at 77. We note that "[a] judgment is against the manifest weight of the evidence only when an opposite conclusion is clearly apparent." *Id.*

¶ 31 In this case, we agree with respondent that the State failed to establish, by a preponderance of evidence, that he was unfit or unable to care for, protect, train or discipline Star. R. We nonetheless find that the court's decision to place Star R. with a DCFS guardianship administrator was not against the manifest weight of the evidence. See *In re Marriage of Chez*, 2013 IL App (1st) 120550, ¶ 26 (noting that "[a] reviewing court may affirm the trial court's judgment on any basis appearing in the record, regardless of whether the trial court relied on that basis or whether the trial court's reasoning was correct").

¶ 32 The record shows that respondent was established as Star R.'s father only recently, in February 2014. Respondent did not see Star R. from the time she was born until about two weeks prior to the dispositional hearing, and he has only met with her on two occasions at this point. He has not yet had supervised visits in his home due to his lack of an established relationship with Star R. Also, he has not been assessed for individual services. Star R., meanwhile, has been living safely with three of her siblings in a two-parent foster home since September 6, 2013. Cole noted that Star R. reacted with "a blank stare on her face" when confronted with the fact that respondent was her father and that she also did not know who respondent's son, Donald, was. He stated that Star R. is currently in need of counseling to address her recent discovery that respondent is her father. Also, importantly, he has not even spoken with her yet about whether she is open to *visiting* with respondent, let alone being in his custody.

¶ 33 Under the circumstances, there can be no doubt that it is not in Star R.'s best interest to be taken away from her siblings and her most recent home so that she can be placed with her biological father, a man with whom she has no established relationship and who may or may

not use drugs and/or alcohol. Accordingly, the circuit court properly concluded that it was in Star R.'s best interest that she be placed in the custody of a DCFS guardianship administrator until such further time as respondent can be screened for drugs and alcohol, individually assessed, and properly united with Star R. See 705 ILCS 405/1-3(4.05) (West 2012) (factors to be considered in determining child's best interest).

¶ 34       For the reasons stated, we affirm the dispositional order of the circuit court of Cook County.

¶ 35       Affirmed.